44 N.J. Super. 419 (1957)
130 A.2d 871
WALTER G. SHERMAN, PLAINTIFF-RESPONDENT,
v.
MILTON JOSEPHSON, DEFENDANT-APPELLANT, AND THE PERFECTION DEVELOPMENT COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued March 11, 1957.
Decided April 9, 1957.
*421 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Frank I. Casey argued the cause for respondent.
Mr. James M. Davis, Jr., argued the cause for appellant.
The opinion of the court was delivered by FRANCIS, J.A.D.
The issue in this cause concerns the legal propriety of a judgment against defendant individually representing commissions earned by plaintiff Sherman, a real estate broker, on the sale of certain property owned by a corporation of which defendant is president.
The factual framework must be outlined in order to present an understandable view of the case. During the period with which we are concerned, the Perfection Development Company, a corporation, was the owner of a tract of land of slightly over 58 acres in Bordentown, New Jersey, and defendant, Milton Josephson, an attorney, was its president. More specifically, in his answer to the complaint Josephson admitted that he was the "principal and only real stockholder" of the corporation.
In the summer of 1954 Josephson requested Sherman to sell the property "for him." Sherman agreed and was given the particulars, including the asking price of approximately $1,700 per acre. There was no disclosure of title in the Perfection Development Company. On the contrary, the indication was that Josephson occupied the status of owner. Sherman busied himself in the quest for a buyer and early in August produced one Henry Aaronson of New York as a buyer. A sale price of $87,000 was agreed upon and on August 2 Josephson drew the contract in his office. The corporation was named as owner and vendor. This was the first awareness Sherman had that title was not held by Josephson. Execution of the document was done in this fashion:
 "The Perfection Development Company
 Milton Josephson."
*422 On August 5 Sherman called at Josephson's office and pointed out the absence of any clause in the agreement recognizing him as the broker and fixing the amount of his commission. Apparently the oral understanding was that 10% of the sales price would be the rate. However, at Josephson's suggestion the earned amount was reduced to $8,000, whereupon the stipulation was reduced to writing in the following form prepared by him:
 "Perfection Development Co.
 Bordentown, N.J.
 Att: Mr. Josephson
Dear Mr. Josephson,
This will confirm our understanding that I am to receive a commission for the sale of the Cemetery tract to Aaronson associates in the sum of $8,000.00 provided that the buyers actually purchase the property and pay for the same and the commission shall be payable pro rata as you receive the proceeds.
 Walter G. Sherman /s/
 Accepted:
 Milton Josephson /s/
 Milton Josephson"
During the negotiations for the sale the parties were aware that the purchaser's home construction plans did not conform with the local zoning ordinance. In that connection the seller unqualifiedly agreed, among other things, "to have the Township approve and issue building permits to construct one (1) family homes on the tract of land sold hereunder.
"1. Said homes to have 860 square feet of living space, including the utility room.
2. Two of said homes shall be permitted to be erected to the acre, which acre shall include all roads (streets and avenues).
3. Said homes shall be permitted to have a cess pool as if said homes were erected upon 20,000 square feet of land."
The seller undertook also to "obtain the necessary and proper permits and consents whereby the Township will approve and permit the construction of roads * * * in *423 the tract of land sold herein which shall not exceed the cost of $1.50 per square yard."
And finally it was stipulated that:
"E.1. In the event the seller does not perform, comply or meet all the aforesaid conditions within sixty (60) days from the date hereof, the Buyer shall have the right at his sole option to cancel and terminate this contract or to continue with same. Upon written notice, either by registered mail or personal service, being given to Milton Josephson, the escrowee and attorney for, and office of the Seller (sic), of the Buyers desire to cancel and terminate this contract, the said Milton Josephson, escrowee, shall forthwith return the One Thousand ($1,000.00) Dollars to the Buyer and upon refunding said sum both parties to this agreement shall be released from any liability hereunder. However, in the event the Buyer desires to continue with this contract, he shall by registered mail or personal service serve a notice of his intention to so do and shall comply with terms of purchase hereinafter set forth. (Emphasis added.)
2. When the Seller shall have complied with and performed all the conditions hereinabove, the Seller shall serve, either by registered mail or personal service, a notice of compliance and the Buyer shall thereupon comply with the terms of purchase hereinafter set forth."
According to Josephson, some efforts were made by him to fulfill these contractual commitments. The water supply is controlled by the municipality and he took up with the mayor the matter of obtaining permits to tap into the water mains. But this was not successful. However, the record does not show that he ever advised the buyer of this important failure.
With respect to the building code and zoning ordinance changes or variances he had agreed to obtain, the testimony reveals that they, too, were discussed with the mayor and a member of the planning board. Josephson asserted that in order to present the matter formally it was necessary to submit with the written applications a plot plan showing the proposed street and lot layout of the tract. He made certain requests of the attorney for the buyer orally and in writing on October 13 and 18, for information and authority to have the township engineer prepare such a plan but the buyer did not comply. The sketch of the type *424 house and the copies of a plot plan given to him were not adequate for the purpose.
When these letters were written in October the 60-day period allowed for securing the necessary permits had expired. Even though the buyer had given no express indication of an intention to exercise the termination option, Josephson had already sought an extension. On October 8 the attorney for the buyer wrote saying that he would approve and recommend to the buyer that the matter be extended to November 30 and that he would endeavor also to have Aaronson write granting the extension. The attorney's letter plainly indicates an intention to proceed with the transaction. Although such extension had not been sent prior to the alleged breach by the seller, no evidence was adduced indicating that Aaronson ever threatened or took any positive action toward putting an end to the contract. It is noted also that reference is made to an oversight in the written contract, namely, the agreement that the purchaser was to receive two acres on which to erect model houses. Apparently this was taken care of thereafter because the contract introduced in evidence shows the following undated addendum after the signatures of the parties:
"The seller agrees to convey to the Buyer as part of the down payment two acres adjoining Seidel and Cemetery Lane.
It being further understood and agreed between the parties that releases under the mortgage shall not consist of all frontage but shall be mutually agreed upon between the parties.
 M.J. /s/
 C.R. /s/"
The initials C.R. refer to Charles Rosenthal, the buyer's attorney.
Not having received the written extension or the particular plot plan by November 1, defendant said he considered the contract at an end. The $1,000 deposit was not returned because of what he considered to be the buyer's failure of performance. Shortly thereafter negotiations for sale of the premises were resumed with another party and a contract of sale was executed on or about January 28, 1955. *425 The next day, January 29, Josephson sent back the Aaronson deposit of $1,000 with the statement that "conditions make it impractical for our negotiations to continue." On January 31 the buyer's attorney advised that the contract was considered in force and demanded that a date be fixed for the closing. Thereafter, on February 15, defendant was notified that the buyer would call at defendant's office on February 24 at 11 A.M. to carry out the terms of the agreement. On the 24th this appearance took place and a tender was made. A dispute appears as to whether a certified check was presented, but defendant conceded that he said at the conference he would admit for the record that such a check had been tendered. In further connection with this meeting, plaintiff's witnesses described certain disingenuous conduct of the defendant regarding the new contract of sale he had executed. That testimony was disputed and the issue of credibility thus arising became a jury problem.
Plaintiff sued for his commission, naming Josephson and the Perfection Development Company as defendants. The complaint is in two counts; the first against the individual and the second against the corporation alleging Josephson's agency. At trial following the opening to the jury, plaintiff consented to the dismissal of the action against the company. Defendant then moved for dismissal as to him on the ground that the opening departed from the theory of the complaint and the pretrial order. Denial of the motion is made a ground of appeal.
Our examination of the somewhat ambiguously drawn complaint and of the general statements of the pretrial order leads us to conclude that no error was committed in this regard. There is very little in our practice to commend a dismissal on the plaintiff's opening to the jury. It should never be granted unless the facts are undisputed and the law is free from doubt. Liberatori v. Yellow Cab Co. of Philadelphia, 35 N.J. Super. 470, 474 (App. Div. 1955); Okker v. Chrome Furniture Mfg. Corp., 26 N.J. Super. 295, 298 (App. Div. 1953); Sole v. Clifton Colonial Gardens, Inc., 14 N.J. Super. 575, 578 (App. Div. 1951). At this *426 point in the proceedings, the trial court is justified in exercising a most liberal discretion in disposing of the matter. The case is rare indeed where the interests of justice will not be served by withholding action on or by denying the motion and receiving the plaintiff's proof.
The argument is advanced that a dismissal should have been granted at the close of the case because it appeared as a matter of law that Josephson acted in the transaction as the known agent of a disclosed principal. The trial court submitted to the jury under a charge quite favorable to the defendant (See Mecham, Outlines of Agency, §§ 302, 303 (1952); Restatement, Agency, § 323), the issue as to whether on the facts established defendant acted as an individual or as such an agent in engaging the plaintiff and in executing the writing agreeing to pay the commissions. We find no error in this action. The testimony as to the manner in which Sherman was engaged considered in association with the written agreement to pay commissions signed individually by Josephson without any qualification or designation denoting agency, makes denial of the motion unassailable.
A quite comparable situation appeared in Sadler v. Young, 78 N.J.L. 594 (E. & A. 1910). There, Young signed a short agreement to pay Sadler commission for the sale of certain described real property. There was no designation of agency appended to the signature or in the body of the instrument. The property was owned by a corporation of which he was president. In discussing Young's personal liability, the Court of Errors and Appeals said:
"* * * In the first place, it does not follow, as a necessary inference, that because the land was owned by a corporation of which the defendant was president, he was acting as its agent in making the contract with the plaintiff. His official relation to the corporation was no bar to his right to make a personal contract with the plaintiff of the tenor of that sued upon, and it is quite possible that his financial interest in the corporation was of sufficient importance to induce him to do so. In the second place, even if it be assumed that in making the contract he acted as the agent of the corporation, he is not on that ground relieved from personal responsibility. The body of the contract provides that he, not the *427 corporation, shall pay the commission, and it is signed by him personally, and not as the agent or representative of the corporation. Since the decision of Kean v. Davis, 20 N.J. Law, 425, and s.c. on error, 21 N.J. Law, 683, [E. & A. 1847] [Sup. Ct. 1845] the law has been settled in this state that an agent who contracts in such form as to make himself personally responsible cannot afterward, whether his principal was or was not known at the time of the making of the contract, relieve himself from that responsibility." (Emphasis ours.)
In connection with the emphasized portion of the opinion, it is interesting to note a conversation about the commission claim which took place between Sherman and Josephson the day after the contract of sale was made with the new purchaser. According to Josephson's testimony, he said to Sherman:
"Walter, you know that I cannot pay you a commission under that agreement because when we entered into that written agreement you were the one who wrote the letter to me at my direction saying that you would only get paid if these people bought the ground and paid me for the ground, and you would get a commission pro rata; * * *. You knew I was trying desperately to sell that ground and I was willing to pay you if they actually bought the ground." (Emphasis added.)
Considerable stress is laid upon the contention that plaintiff's case should have been dismissed because the proof showed breach of the contract of sale by Aaronson. It must be conceded, of course, that a broker may make his right to commissions dependent upon the actual passage of title to the purchaser produced by him. Clark v. Jelsma, 40 N.J. Super. 58 (App. Div. 1955); Slonim, Ltd. v. Bankers Mortgage & Realty Co., 133 N.J.L. 45 (Sup. Ct. 1945); Lippincott v. Content, 123 N.J.L. 277 (E. & A. 1939). The course of the argument is that when the seller had not obtained the various permits set out in the contract within the 60-day period, the buyer was duty bound to exercise by affirmative action his "sole option" to cancel or to waive those conditions within a reasonable time. And defendant claims that failure to do so prior to January 28, 1955, when he resold the property, constituted a breach or *428 abandonment of the contract because the demand for performance on January 31 was made an unreasonable length of time after the end of the allotted 60 days. There is considerable doubt from the record as to whether this question of reasonable time was raised in the trial court. No request to charge was submitted on the subject. However, the charge discussed the facts and the issue as to who was responsible for the failure to complete the contract, and in the absence of a request to instruct the jury more specifically on this particular facet of the case, it must be considered as a problem implicit in the charge.
In any event, ordinarily what constitutes a reasonable time is a question of fact for jury determination. In the present case, without reiterating the facts as outlined above, we think the nature of the contract and the relations and course of dealings between the parties demonstrate adequately that the trial court would not have been justified in declaring as a matter of law that more than a reasonable time elapsed after October 2, 1954 before Aaronson in effect announced his waiver of the seller's permit obligations by means of his demand for the closing of title.
At this point we may say also that on the proof adduced, it was for the jury to say whether the breach of the contract was produced by the neglect on the buyer's part to furnish the plot plan requested by defendant.
A number of additional errors are charged as arising from the admission or exclusion of certain questions put to the plaintiff and the defendant. Our examination of them leads us to conclude that they furnish no such basis as would require a reversal of the judgment.
Affirmed.