53 N.J. Super. 27 (1958)
146 A.2d 510
HORACE R. TOY, PLAINTIFF-APPELLANT,
v.
GLENNIS S. RICKERT, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1958.
Decided November 28, 1958.
*28 Before Judges GOLDMANN, CONFORD and HANEMAN.
Mr. Francis J. Beyrent argued the cause for appellant (Messrs. Schenck, Smith & King, attorneys).
Mr. Harvey G. Stevenson argued the cause for respondent (Messrs. Stevenson & Willette, attorneys).
*29 The opinion of the court was delivered by HANEMAN, J.A.D.
Plaintiff sought damages for personal injuries alleged to have resulted from defendant's negligence in administering a dose of "bicillin" (penicillin).
Plaintiff's appeal is "from the final (sic) judgment of the * * * Law Division * * * entered in favor of defendant * * * on March 24, 1958." On that date the trial court made an order denying plaintiff's motion for a new trial. The final judgment was entered February 27, 1958 on defendant's motion for dismissal with prejudice, at the conclusion of plaintiff's case. However, counsel for both parties stipulated at oral argument that the date stated in the Notice of Appeal was an inadvertent error and that this appeal should be considered as from the final judgment of February 27, 1958. We shall so consider the appeal.
Plaintiff, a resident of Mountain Lakes, Morris County, owns and operates his own business in New York City. On the evening of February 17, 1956 he alighted from the train at Mountain Lakes at "about seven o'clock and had a slight chill, a feeling that I was getting a cold." Shortly after he arrived at his home plaintiff telephoned and advised defendant, a local physician, that he thought an injection of penicillin would be a "good idea."
Defendant went to plaintiff's home at about 9 P.M. and obtained some history from him concerning his prior experience with colds. Plaintiff informed defendant that colds "usually wound up in [his] chest," and that on at least two prior occasions he had received hypodermic injections of penicillin. Plaintiff testified that these prior injections had been administered to his right buttock. Defendant then administered a dose of "bicillin" by hypodermic injection into plaintiff's right buttock. Within ten seconds thereafter plaintiff's right leg from the thigh to the foot became numb, and within one-half hour later he was seized with violent shaking. Defendant, who had remained at plaintiff's home, then drew a sketch for plaintiff "showing how the contents of the hypodermic needle can get into the area of the sciatic nerve." Plaintiff's buttock became swollen to such an extraordinary *30 size that he could neither sit nor lie down. Several days thereafter plaintiff was admitted to St. Clare's Hospital at Denville, where he remained for two days. He continued under defendant's care for eight weeks. Defendant prescribed and plaintiff made use of narcotics to relieve the pain, and sleeping pills which induced three hours of "unconscious" sleep each night. This treatment continued for three months, i.e., during the period of defendant's attendance, and thereafter at the direction of a physician whom plaintiff engaged in defendant's stead. The insensitivity of the leg subsided in about two weeks but was succeeded by extreme pain in plaintiff's foot. That pain abated in about eight months, but plaintiff still has a dull ache and walks with a slight limp.
Plaintiff adduced expert medical testimony which established that the cause of the pain was a neuro-vascular demineralization (osteoporosis) of the bones in plaintiff's foot, and that the condition was a result of sciatic nerve injury. Plaintiff failed to adduce any proof concerning the standard of care and skill to be exercised by a physician in administering a hypodermic needle to the buttock, or any evidence of the manner in which defendant administered the injection.
At the end of plaintiff's case the trial court granted defendant's motion for dismissal with prejudice upon the ground that plaintiff had failed (1) to establish the requisite degree of professional skill demanded of a physician, by expert testimony of those qualified by their own knowledge and experience in the same profession, and (2) to establish by such testimony that defendant had not exercised that degree of knowledge and skill which usually pertains to other members of his profession. Plaintiff urged, in opposition to the motion, that such proof was unnecessary, since the facts elicited justified the application of the res ipsa loquitur doctrine.
During the argument of this motion plaintiff requested leave to reopen the case and permit him (1) to call defendant to testify concerning a writing he had signed as to the *31 "causal relationship between the injection and the injury to the sciatica (sic) nerve." (This statement read "causalgia resulting from chemical and physical irritation to [the] right sciatic nerve after an injection of 600,000 units of bicillin"), and (2) to recall a Dr. Palazzi for the purpose of having him testify to the causal link between the injection and the injury to the sciatic nerve.
Defendant, in opposing the application to reopen, pointed out that the statement did not establish the two elements essential to the case  the standard and a deviation therefrom. The same objection was made to recalling Dr. Palazzi. During the ensuing colloquy, plaintiff made it entirely clear that his motion to reopen concerned only the issue of causation. The trial judge then denied the motion, and judgment of involuntary dismissal was entered.
In his argument on the motion for a new trial, plaintiff's counsel stated that Dr. Palazzi, had he been recalled, would not have testified that defendant "did something wrong."
Plaintiff urges that the trial court erred in (1) granting defendant's motion for dismissal, and (2) in denying plaintiff's application to reopen the case so as to permit him to call defendant and Dr. Palazzi.
The theory of plaintiff's case, both here and at the trial, is that defendant was negligent in that he administered the initial treatment (the penicillin) improperly. The main thrust of his argument is that the proofs satisfy the conditions prerequisite to the application of the doctrine res ipsa loquitur. He urges that the trial court should have applied that doctrine in this case, thus requiring defendant to go forth with his proofs.
Neither improper diagnosis nor impropriety in the treatment selected are in issue here. The sole factual issue is whether defendant inserted the hypodermic needle in an unorthodox manner or at a site which is not considered orthodox or proper.
The crucial issue in a case such as this is whether the defendant, as an attending or treating physician, was negligent in administering the treatment selected and, if negligent, *32 whether his negligence is causally related to the injuries which plaintiff sustained.
Proof of the standard of care demanded of a physician and the deviation from the established standard are ordinarily elements essential to plaintiff's cause of action. The general rule is that the
"* * * failure to use the requisite degree of professional skill demanded of the physician or surgeon must ordinarily be established by the expert testimony of those qualified by their own knowledge and experience in the same profession to know and state whether in the given circumstances of a particular case the physician or surgeon had failed to exercise that degree of knowledge and skill which usually pertains to other members of his profession."
Hull v. Plume, 131 N.J.L. 511, 515 (E. & A. 1944); see also Carbone v. Warburton, 22 N.J. Super. 5, 10 (App. Div. 1952), affirmed 11 N.J. 418 (1953), on a point not pertinent here; Woody v. Keller, 106 N.J.L. 176 (E. & A. 1930); Burdge v. Errickson, 132 N.J.L. 377 (E. & A. 1945).
It is recognized that it is essential to establish a standard by expert testimony, "except in those unusual cases where the conduct required by the particular circumstances is within the common knowledge of laymen." Carbone v. Warburton, supra, 22 N.J. Super., at p. 10. See also Steinke v. Bell, 32 N.J. Super. 67 (App. Div. 1954); Hull v. Plume, supra.
There is respectable authority for the conclusion that the res ipsa loquitur doctrine does not ordinarily apply to medical malpractice cases. The cases so holding, however, generally do not involve a specific act or omission. See 162 A.L.R. 1265, 1269, 1272, 1291 (1946); 70 C.J.S., Physicians and Surgeons, § 62.
The refusal to apply this doctrine finds its support in the premise that ordinarily laymen are not qualified to say that a good doctor would not do what defendant did. Expert testimony is therefore held to be an indispensable prerequisite to a finding of negligence by a jury of laymen. Prosser on Torts (2d ed. 1955), p. 210.
*33 Research has failed to disclose any reported case in New Jersey where the res ipsa loquitur doctrine has been applied eo nomine to a medical malpractice action. However, in Niebel v. Winslow, 88 N.J.L. 191 (E. & A. 1915), and Stawicki v. Kelley, 13 N.J.L. 551 (Sup. Ct. 1934), the courts adverted to the doctrine. In Steinke v. Bell, supra (32 N.J. Super. 67), a case completely different from ours on its facts, although not specifically referring to res ipsa loquitur as the determinative principle, the court arrived at a conclusion consistent with that theory. In that case the defendant dentist, while removing plaintiff's lower left second molar, also "extracted or caused to come out her upper right lateral incisor without her knowledge or consent."
The Supreme Court has recently restated the criteria necessary to the application of the doctrine and the scope of the inferences allowable under its application. Speaking through Mr. Justice Heher, in Bornstein v. Metropolitan Bottling Co., 26 N.J. 263, 269 (1958) the court said:
"The maxim res ipsa loquitur symbolizes a permissible presumption of negligence from the plaintiff's proof, that is to say, an allowable inference of the defendant's want of due care where (a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect. The rule is grounded in probability and the sound procedural policy of placing the duty of producing evidence upon the party who has superior knowledge or opportunity for explanation of the causative circumstances. This is an essentially permissive presumption that these circumstances furnish reasonable grounds for the inference that if due care had been exercised by the person having control of the instrumentality causing the injury, the mishap would not have occurred. If such an inference of fact is sustainable as reasonably probable, a prima facie case is established, and the issue is taken to the jury."
There is certainly no reason not to apply the doctrine to medical malpractice actions where plaintiff's proofs meet the requirements laid down. Nothing inheres in medical malpractice actions, as such, which would mitigate against the application of that doctrine in a proper case.
*34 For us to conclude that the occurrence, in a medical malpractice action, bespeaks negligence, we must first determine that the common knowledge or experience of ordinary laymen is such that they can infer that the harm would not have eventuated but for the negligence of defendant. This is to say that, in the ordinary course of things, the event would not have occurred if proper care had been exercised.
The practice of medicine concerns itself with a relatively inexact science. There are many variables and imponderables concerning hypodermic injections which are not within the common knowledge and experience of men. These factors lend meaning to the ordinary rules which require expert proof of the standard practice and deviation therefrom in cases such as this.
We conclude that the instant matter is not a proper case for invoking the aid of the doctrine because it lacks the first essential requirement. We cannot say that the occurrence here ordinarily bespeaks negligence. For aught that a layman could properly infer, the damaging effect of this injection might well have ensued, consistently with the exercise of ordinary professional care by defendant.
In Woody v. Keller, 106 N.J.L. 176, 178 (E. & A. 1930), the court said:
"In the case sub judice there was no evidence of negligence, that is, of lack of such due care and skill as usually pertains to members of the medical profession. Mere mistake or error is not sufficient. There must be proof of lack of care as before indicated or the plaintiff must fail."
Had plaintiff been permitted to reopen his case and recall the witnesses as requested for the stated purposes, he admittedly would not have supplied the essential elements which were lacking in his proof, i.e., the establishment of a standard by expert testimony and a deviation therefrom. It follows that the trial court's denial of the motion to reopen could not have affected the final result and was therefore not error.
Affirmed.