63 N.J. Super. 106 (1960)
164 A.2d 75
ANNE TERHUNE AND CLIFFORD TERHUNE, PLAINTIFFS-APPELLANTS,
v.
MARGARET HAGUE MATERNITY HOSPITAL, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 1960.
Decided September 23, 1960.
*108 Before Judges CONFORD, FOLEY and KILKENNY.
Mr. Louis G. Morten argued the cause for plaintiffs-appellants (Mr. Maurice J. Frank, attorney).
Mr. Jacob Friedland argued the cause for defendants-respondents Margaret Hague Maternity Hospital, Board of Managers of Margaret Hague Maternity Hospital, County of Hudson and Dr. William D. Melosh (Mr. William F. Kelly, Jr., attorney).
Mr. Henry F. Hoey, Jr. argued the cause for defendant-respondent Dr. Arthur D. Zampella (Messrs. Braun and Hoey, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
We have here to review the dismissal of a negligence action on the plaintiffs' opening. The gravamen of the action is that in the course of being delivered of a child in the defendant hospital the female plaintiff sustained a facial inflammation or rash in the nature of a burn as a result of negligence in the administration to her of an anesthetic. The defendant doctors Zampella and Melosh, and another physician, not made a defendant, participated in the delivery of the child. Still another doctor, who was the hospital staff anesthetist actually in charge of the administration of the anesthetic, was not made a defendant.
Involved in the resolution of this appeal are legal principles pertaining both to the sufficiency of an opening to withstand dismissal and to malpractice or negligence by physicians. Both legal questions call for close attention to the factual representations made in the cause by the time *109 the trial court acted in this matter and to the way in which they came into the case.
In summary, the pretrial order stated plaintiffs' factual position as follows. Mrs. Terhune entered the hospital under the professional care of Dr. Zampella on June 24, 1956 in order to be delivered of a child. On June 25, 1956, while in the delivery room, she received "burns" as the result of the "improper application of anesthetic." The mask was not properly attached to her face, the "anesthetic machine and mask" were not inspected, and "proper tests" of the patient were not made before administration of the anesthetic. The apparatus was operated and maintained by the defendants hospital and county. Dr. Zampella and Dr. Melosh "were actively engaged in the delivery."
In his opening to the jury plaintiffs' counsel stated that Mrs. Terhune's testimony would in essence be to the following effect: She was unconscious during the delivery because she had been given an anesthetic. She delivered during the night. When she awoke it was daylight. She had a burning sensation around her face, which was swollen twice its normal size, and she could barely look through her eyes. Her face was treated at the hospital with salves and medicines. "You will hear from her lips how it was recognized that this came, or this occurred to her as a result of the delivery of the child."
Mrs. Terhune left the hospital after a few days and was treated by Dr. Zampella for the condition which had "caused eruptions all over her face." Later she went to Dr. Donnelly, director of the hospital. "She told him what the story was, `Look what happened to me,' so forth, so on." Dr. Donnelly sent her to an eye specialist, and she was later examined and treated by other physicians for the skin condition, most recently in 1959. The opening concluded as follows:
"Now, I cannot come here and say to you precisely who did what wrong. Mrs. Terhune did not know, she does not know today. Obviously, only knowing the facts as they have been given to me, I do not know. We claim, and we will attempt to show that the *110 hospital in its supervision and its preparation of the various medicines, and anesthesias and so forth, which are necessary for this delivery, this operation, bringing into life of a child, was negligent. That the doctors who supervised and participated in the delivery were negligent. They did something wrong to this woman, because she never had any trouble before, but after this operation, after this delivery of the child she had a terrible skin condition, these burns all over her face which progressed to other parts of her body.
Now, it will be for you the jury to hear the evidence as it is put forth, and taking into consideration the facts as you have heard them, decide whether this woman did anything wrong whatsoever, whether she is in any way to blame for this condition over which she had absolutely no control, or whether these various people together, singularly or jointly, as the case may be, in view of the fact we are suing several doctors and the hospital, and so forth, are responsible for the injury to her. If you believe that they are responsible, then we ask you to compensate her for the suffering she has undergone, and still undergoing.
Now, I want to make it perfectly clear that we say that these things occurred because they must have occurred. Since Mrs. Terhune did not do it someone or something, or some people, either together or singularly is responsible for what happened to Mrs. Terhune. It is up to you people on the jury to decide this."
Thereupon all defendants moved for a dismissal. It was argued that the pretrial order alleged specific acts of negligence but that on the opening plaintiffs professed no knowledge as to the negligence but were proceeding on the theory of res ipsa loquitur; that the theory was not here applicable; and that no specific acts of negligence were alleged at all as to the individual defendants. The court called upon counsel for plaintiffs to elaborate as to his intended proofs and witnesses. He stated he would prove certain admissions by the defendants, but without indicating what they were; that it was "up to his discretion" to call Dr. Zampella or Dr. Melosh as his witnesses to "bring out the fact of what they did in the handling of this woman." He said the answers to interrogatories showed Mrs. Terhune's condition to be "urticarial weeping rash," which he represented was medically known as a burn, and he asserted that the contrasting conditions of Mrs. Terhune's face before and after delivery justified the application of the doctrine of res ipsa loquitur against the defendants. In answer to *111 questions by the court as to what medical or other witnesses he would produce, counsel said he had been unable to procure the attendance of any medical witnesses on behalf of the plaintiffs and would call as witnesses Mrs. Terhune and Dr. Zampella, the latter to verify certain admissions allegedly made to her.
In granting the motion for involuntary dismissal the trial judge stated that res ipsa loquitur did not apply here; that a showing of "express negligence" by the defendants was requisite, yet absent from the case as outlined. He declared that if plaintiff had in fact been "burned," a case of res ipsa loquitur might appear, within the discussion in Toy v. Rickert, 53 N.J. Super. 27, 32-34 (App. Div. 1958), but that the condition here involved was not a burn but an infection, as manifested by the spread of the disease to other parts of the body.
When one of the defendants undertook to refer to testimony of Mrs. Terhune on depositions, the court sustained an objection, stating it felt that on such a motion the depositions should not be considered.
In an action for negligence or malpractice against a physician the plaintiff ordinarily is required to establish that the defendant's treatment or care fell below the standard established and recognized by the medical profession for the indicated condition of the patient, and the standard must be proven by expert medical testimony. Toy v. Rickert, supra (53 N.J. Super. 27, 32). But where the asserted negligence consists of conduct so obviously wanting in reasonable medical skill and prudence that it may be so adjudged even by a layman, expert testimony as to the standard offended is unnecessary. Becker v. Eisenstodt, 60 N.J. Super. 240 (App. Div. 1960) (plastic surgeon inadvertently using a caustic in post-operative treatment of patient's nose); Steinke v. Bell, 32 N.J. Super. 67 (App. Div. 1954) (removal of wrong tooth by dentist); and see Toy v. Rickert, supra (53 N.J. Super., at pp. 33, 34). In the latter case the court declined to apply the exception, sometimes identified *112 as the res ipsa loquitur exception to the general rule, to the instance of an injection by hypodermic syringe in the buttock of an antibiotic where the injection immediately affected the sciatic nerve with swelling of the area and ultimately caused painful demineralization of bones of the foot.
With this background as to the substantive negligence principles implicated, we turn to the procedural point respecting the sufficiency of an opening. We have the benefit of a recent comprehensive treatment of that subject by the Supreme Court in Passaic Valley Sewerage Com'rs v. Geo. M. Brewster, etc., Inc., 32 N.J. 595, 605-608 (1960). The court there (p. 605) approved our statement of the purpose of an opening in Farkas v. Middlesex County Board of Chosen Freeholders, 49 N.J. Super. 363, 367-368 (App. Div. 1958), as designed "to do no more than inform the jury in a general way of the nature of the action and the basic factual hypothesis projected, so that they may be better prepared to understand the evidence." Said Mr. Justice Hall for the court in the Passaic Valley case, "Proposed evidence should not be detailed and it will be little more than an outline, quite frequently a fairly indefinite one by reason of the nature of the case." (32 N.J., at p. 605.)
Our present practice does not favor a dismissal on plaintiffs' opening to the jury. Id., p. 606. "* * * [T]he trial court is justified in exercising a most liberal discretion in disposing of the matter. The case is rare indeed where the interests of justice will not be served by withholding action on or by denying the motion and receiving the plaintiff's proof." Sherman v. Josephson, 44 N.J. Super. 419, 426 (App. Div. 1957), approved in the Passaic Valley case (32 N.J., at pp. 606, 607). Nevertheless, when all the legally determinative facts are in effect stipulated or admittedly uncontrovertible and as a matter of law they fail to measure up to a legally cognizable cause of action, the court may dismiss on the opening. Id., 32 N.J., at p. 607.
Liberal as the court must be in indulging the hypothesis of every possible favorable legitimate inference from *113 plaintiff's proofs at the end of his case, for purposes of a motion for involuntary dismissal, it must be even more tolerant of the projected showing on a similar motion on an opening. Id., p. 608; Farkas v. Middlesex County Board of Chosen Freeholders, supra (49 N.J. Super., at p. 367).
A fair application of the foregoing substantive and procedural rules to the instant case poses difficult problems of judicial appraisal, judgment and discretion. Besides the general factors adverted to in the cited authorities on openings, we think the present case presents other considerations bespeaking maximum tolerance for the plaintiffs' posture  the fact of the patient's unconsciousness when the alleged negligent acts were taking place and the consequent pooling of all direct evidence of the occurrences in hostile hands, as well as the commonly known difficulty of obtaining expert proofs in support of a malpractice claim. Yet each of the several defendants is entitled to an individual determination of the sufficiency of the projected showing as to itself, whatever might be indicated as to the others, and this on the basis of a dispassionate application of the prevailing law on the subject.
We do not criticize the view of the trial court that it should not have examined the depositions on file in determining such a motion, in the absence of a direct proffer of anything therein as proof. It is our view, however, as an appellate court, that the interests of justice indicate that we should do so in the present circumstances. Since we are reviewing a dismissal, the spirit of the cited decisions respecting liberality toward the plaintiff on a motion to dismiss on an opening would appear to favor our seeking potential evidential support for the obviously thin position of the present plaintiffs wherever a clue to its existence may appear; as, for example, plaintiffs' allusions below to admissions by defendants.
Mrs. Terhune, testifying on depositions on call of defendant Dr. Zampella, stated that when Dr. Zampella first saw her face on the morning after the delivery he "asked *114 [her] what happened to [her]." In the course of the same direct testimony she stated that she went to see Dr. Donnelly (medical director of the defendant hospital) about eight days after the delivery to show him her face and ask for amends. She told him: "I was burned here in your hospital." He "admitted" to her, apparently after getting her records, that she had been burned, and he referred her to an eye specialist.
Dr. Zampella's testimony was taken on depositions by the plaintiffs. We have examined it in an endeavor to learn what they might possibly show through him, if they called him as a witness, a possibility which was suggested by them before the trial court.
Dr. Zampella arranged for Mrs. Terhune's admission to the hospital as his patient, he having "courtesy privileges in obstetrics" there. She had been his patient for three years. She had no history of skin marks or eruptions prior to her delivery of this, her ninth or tenth child, on the occasion in question. Admission to the hospital was at 7:30 P.M., June 24, 1956, and to the delivery room at 12:55 A.M., June 25. A general anesthetic, consisting of ether and oxygen, was administered to the patient by Dr. Mandala, who is employed by the hospital and was assigned by it as anesthetist for this case as a matter of routine. An anesthetic rubber mask was placed on the patient's face, covering her nose and mouth, and remained there during the period of delivery, about a half-hour. Delivery took place at 1:59 A.M. While Dr. Zampella was present all during the period of delivery, the "actual application of forceps" was done by Dr. Melosh, he and Dr. McLaughlin being resident physicians of the hospital and assigned to the case under hospital routine because it was an abnormal parturition. The anesthesia was given in Dr. Melosh's presence, "[b]ut the responsibility for the anesthesia is that of the anesthetist, that is the immediate responsibility of the anesthetist." Dr. Zampella had nothing to do with the application of the mask or the giving of the anesthesia. *115 He said, "The anesthetist is engaged by the hospital to give anesthesia for the visiting doctors and I was one of the visiting doctors." When the mask was removed from the patient's face, "it was reddened, but that was all." The reddening was due to "the systemic effects of the anesthesia." The witness would not say the skin was "burned." It is "normal and usual" for the face to be somewhat reddened after anesthesia.
Dr. Zampella saw Mrs. Terhune the afternoon following the morning of delivery. Her face was then "blistery and somewhat swollen." It was also "weeping" or "moist." Such a condition is not normal after delivery. He treated her about a week after discharge from the hospital, by which time "the rash * * * had become crusted somewhat and secondarily infected."
We have concluded that the plaintiffs are entitled, on the whole showing before us, to the opportunity to submit their evidence at trial against all the defendants. But we imply no view as to the likelihood that plaintiffs' proofs will be such as to survive a motion for dismissal at the end of their case  only that enough is made to appear to warrant their having an opportunity to submit them.
If the apparently abnormal effect of the anesthesia on Mrs. Terhune's face was, in fact, a species of burning, as the hospital's medical director is purported to have admitted to her, it is possible (whether or not likely) that when all the plaintiffs' proofs are in it will appear that a determination could be made that this is so obviously an untoward consequence of careful anesthesis that a lay jury should be allowed to infer negligence by the anesthetist without expert testimony, and thereby implicate his superiors in liability if the rule of respondeat superior is applicable here (the latter point was not argued below or here. See Tutino v. Ford Motor Co., 111 N.J.L. 435, 437 (E. & A. 1933), and compare Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29, 42 (1958), approving Bing v. Thunig, 2 N.Y.2d 656, 163 N.Y.S.2d 3, 143 N.E.2d 3 (Ct. App. 1957) *116 and note the discussion at 143 N.E.2d, at pp. 6-8). Moreover, we imply no views as to possible limited municipal liability, that not having been argued before us. If this were to eventuate, there might also be raised from further evidence concerning Dr. Melosh's responsibilities and duties as resident physician in attendance and his activity the evening in question such inferences as to his participation in or supervision of the anesthetic procedure conducted by his fellow staff-member as to extend responsibility in respect thereto to him.
Insofar as defendant Dr. Zampella is concerned, it may eventuate from an examination at trial of him and the other doctors in the room on plaintiffs' case that Dr. Zampella, as attending obstetrician in charge of the case, had over-all supervision of the entire medical team working on the delivery. While this defendant may have had no direct control over the anesthetist in the handling of the apparatus, the latter may have been subject to instructions from the doctor as to changes in the amount of ether to be administered, or other details of the anesthesia, particularly in view of the circumstance that this was an abnormal parturition, involving use of forceps. While, of course, no one can say at the present posture of the matter that such cooperation as the circumstances may have required between Dr. Zampella and the anesthetist was necessarily causally related to a hypothesized "burning" of the patient during anesthesis, and while the probability may be slight that any proofs purporting to establish such connection will repel a motion for dismissal at the end of plaintiffs' case, the insistent rule of caution in passing on a motion to dismiss on the opening suggests that plaintiffs should retain the opportunity to present their proofs as to this defendant, too.
Judgment reversed; no costs.