74 N.J. Super. 200 (1962)
181 A.2d 25
GEORGIE LEE RENRICK, PLAINTIFF-APPELLANT,
v.
CITY OF NEWARK, NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 23, 1962.
Decided May 9, 1962.
*201 Before Judges PRICE, SULLIVAN and LEWIS.
Mr. Robert C. Gruhin argued the cause for appellant (Mr. Morris Edelstein, attorney).
Mr. Jacob M. Goldberg argued the cause for respondent (Mr. Vincent P. Torppey, attorney; Mr. Goldberg of counsel; Mr. Joseph A. Ward, on the brief).
The opinion of the court was delivered by PRICE, S.J.A.D.
This is a negligence action based on the alleged malpractice of doctors and nurses at Martland Medical Center (Martland), operated by the City of Newark. Plaintiff Georgie Lee Renrick appeals from the dismissal of her suit in the Superior Court on defendant's motion at the conclusion of plaintiff's case. R.R. 4:42-2(b). The sole *202 question presented is whether plaintiff, who produced no expert testimony in support of her claim, was entitled on the proofs submitted to invoke the doctrine of res ipsa loquitur. The trial court's rejection of that contention is challenged as erroneous.
The complaint charged that plaintiff, while a patient at Martland, "was seriously and permanently injured and scarred" by reason of acts of "carelessness and negligence" of defendant, amounting to "active wrongdoing and positive misfeasance" on the part of "its staff, doctors, nurses, internes, agents, servants and employees."
In the pretrial order plaintiff charged that while she was hospitalized at Martland following abdominal surgery, a drug known as "Levophed" was "internally administered" in such a "negligent manner" as to cause "severe burning or sloughing" of both forearms, requiring "skin grafting" with resultant "widespread scarring." Defendant's contention, expressed in the pretrial order, was that plaintiff was admitted to the hospital in a critical condition suffering from a "ruptured gastric ulcer" and "diffuse peritonitis," requiring surgery; that she was in "complete shock" following the operation; that she was "moribund" during the postoperative period; that her condition was so grave that "multiple blood transfusions" were received, "various stimulating drugs" administered and "Levophed" was intravenously given to overcome her "circulatory collapse" which was so extensive as to constitute a "complete failure of [plaintiff's] peripheral circulation." Defendant further contended that the infiltration of Levophed "into the soft tissue" (charged by plaintiff to be the result of defendant's negligence) was "unavoidable due to [plaintiff's] collapsed and fragile vessels while she was in shock." Plaintiff does not challenge the fact (alleged by defendant) that plaintiff's life was "saved" by the use of the drug in question.
Plaintiff's proofs on the issue of liability were limited to (a) her own testimony; (b) the Martland records pertaining to her hospitalization, revealing the abdominal operation, *203 the introduction of Levophed intravenously, the amount thereof and how administered, and the subsequent operative procedures on November 8, 1957 and December 3, 1957, when, by reason of the necrosis of the skin of the forearms, "secondary to levophed infiltration" the aforesaid skin grafts were made; (c) interrogatories propounded by her to defendant and its answers thereto; and (d) photographs of plaintiff's forearms showing the aforesaid scarring and photographs revealing scars on her thigh and abdomen from which skin grafts had been taken.
The proofs showed that plaintiff, a 36-year-old resident of New York, became ill while visiting relatives in Newark. She consulted a doctor who on the following day advised her immediate hospitalization. She entered Martland on October 12, 1957, and the operation was performed on October 14, 1957. The operation, as described in the hospital records was "Closure ruptured ulcer." The preoperative diagnosis was "Ruptured ulcer"; the postoperative diagnosis was "Ruptured gastric ulcer  3 days duration." The hospital records offered by plaintiff further revealed that plaintiff went into shock following her operation, and because thereof, as stated above, Levophed was administered intravenously.
Defendant answered affirmatively one of the aforesaid interrogatories which inquired whether defendant knew "that Levophed could be highly dangerous to tissue if not supervised carefully and that it had the potentialities of sloughing tissue." Further answers set forth in detail the manner in which the Levophed had been administered, the progress of the treatment, and its subsequent discontinuance when infiltration into the tissue was detected.
On this state of the proofs defendant's aforesaid motion for involuntary dismissal was made on the ground that no evidence had been presented establishing defendant's negligence or from which its negligence might be inferred.
In resisting defendant's motion plaintiff's trial counsel, after emphasizing the results of the skin grafting operations, *204 said that plaintiff "doesn't know what happened. I think we are entitled to know whether the infusions were properly done, * * * and whether a proper quantity was given to the plaintiff," who "was unconscious at the time."
The trial court stated that "the res ipsa loquitur doctrine was inapplicable" for the reasons expressed in the case of Toy v. Rickert, 53 N.J. Super. 27 (App. Div. 1958). The dismissal followed.
At trial plaintiff contended, and on appeal again urges, that the doctrine of res ipsa loquitur may properly be invoked in the instant case on the authority of Toy v. Rickert, supra, and Terhune v. Margaret Hague Mat. Hosp., 63 N.J. Super. 106 (App. Div. 1960). On appeal, among other decisions, her counsel also relies on Sanzari v. Rosenfeld, 34 N.J. 128 (1961).
The cited cases do not support plaintiff's contention. In Toy, as here, plaintiff maintained that the proofs satisfy the conditions prerequisite to the application of the doctrine of res ipsa loquitur (Toy, 53 N.J. Super., at p. 31). Moreover, in Toy, as here, "neither improper diagnosis nor impropriety in the treatment selected" was in issue. In that case the sole factual issue was whether defendant, a doctor, inserted a "hypodermic needle in an unorthodox manner or at a site which is not considered orthodox or proper." Toy, at p. 31.
In plaintiff's brief in the case at bar her counsel specifically quotes from a portion of the Toy opinion by Judge (now Justice) Haneman as follows:
"There is certainly no reason not to apply the doctrine to medical malpractice actions where plaintiff's proofs meet the requirements laid down. Nothing inheres in medical malpractice actions, as such, which would mitigate against the application of that doctrine in a proper case.
For us to conclude that the occurrence, in a medical malpractice action, bespeaks negligence, we must first determine that the common knowledge or experience of ordinary laymen is such that they can infer that the harm would not have eventuated but for the negligence *205 of defendant. This is to say that, in the ordinary course of things, the event would not have occurred if proper care had been exercised." Toy, at pp. 33-34.
However, immediately thereafter appears the following statement, to which as aforesaid the trial court in the case at bar alluded:
"The practice of medicine concerns itself with a relatively inexact science. There are many variables and imponderables concerning hypodermic injections which are not within the common knowledge and experience of men. These factors lend meaning to the ordinary rules which require expert proof of the standard practice and deviation therefrom in cases such as this.
We conclude that the instant matter is not a proper case for invoking the aid of the doctrine because it lacks the first essential requirement. We cannot say that the occurrence here ordinarily bespeaks negligence. For aught that a layman could properly infer, the damaging effect of this injection might well have ensued, consistently with the exercise of ordinary professional care by defendant." Toy, at p. 34.
The opinion in Sanzari v. Rosenfeld, supra (from which plaintiff quotes extensively in her brief), affords no support for plaintiff's position in the case at bar. In fact it contains specific refutation of plaintiff's contention. After noting (Sanzari, 34 N.J., at p. 134) that "in the usual negligence case, it is not necessary for the plaintiff to prove the standard of conduct violated by the defendant"; that it "is sufficient for plaintiff to show what the defendant did and what the circumstances were," the opinion continues as follows:
"* * * The applicable standard of conduct is then supplied by the jury which is competent to determine what precautions a reasonably prudent man in the position of the defendant would have taken. 2 Harper & James, Torts, § 17.1, pp. 963-964 (1956). * * * In the ordinary dental or medical malpractice case [defendant Rosenfeld was a dentist], however, the jury is not competent to supply the standard by which to measure the defendant's conduct. Since it has not the technical training necessary to determine the applicable standard of care, it cannot, without more, form a valid judgment as to whether the defendant's conduct was unreasonable under the circumstances. *206 Therefore, ordinarily when a physician or dentist is charged with negligence in the treatment of a patient, the standard of practice to which he failed to adhere must be established by expert testimony. In such cases, if the plaintiff does not advance expert testimony establishing an accepted standard of care, it is proper for the court to grant a dismissal at the close of plaintiff's case. [pp. 134-135]

* * * * * * * *
The doctrine of res ipsa loquitur applies when it is reasonable to say that, under the circumstances, the injury to the plaintiff would not have occurred in the absence of the defendant's negligence. Prosser, Torts § 42, p. 201 (1955); Annotation 162 A.L.R. 1265 (1946) (collecting cases). Whether the res ipsa doctrine applies to a given case therefore depends upon the probabilities. [p. 140]

* * * * * * * *
The doctrine of `common knowledge' is related to res ipsa loquitur, but there is a distinction between the two. In res ipsa cases, plaintiff need only prove his injury, and need not prove a standard of care or a specific act or omission. Ordinarily, the common knowledge doctrine is applied in a malpractice case after the plaintiff proves his injury and a causally related act or omission by the defendant. The effect of applying this doctrine is to allow the jury to supply the applicable standard of care and thus to obviate the necessity for expert testimony relative thereto. In other words, application of the doctrine transforms the case into an ordinary negligence case where, as mentioned above, the jury, from its fund of common knowledge, assays the feasibility of possible precautions which the defendant might have taken to avoid injury to the plaintiff. The basic postulate for application of the doctrine therefore is that the issue of negligence is not related to technical matters peculiarly within the knowledge of medical or dental practitioners." Sanzari, at pp. 141-142. (Emphasis supplied.)
After enunciating the foregoing principles, the court in Sanzari recited the proofs which led it to conclude that, even in the absence of expert testimony as to standard of care, sufficient evidence was submitted to avoid a dismissal at the end of plaintiff's case. Comparable proofs are totally absent in the case at bar.
In Terhune, supra, 63 N.J. Super., at p. 111 (quoted in Clark v. Wichman, 72 N.J. Super. 486, 496 (App. Div. 1962)), where we reversed the action of the trial court in dismissing the action on plaintiff's opening, we recognized (as in Toy, supra, 53 N.J. Super. 27, 32) that in a malpractice case the basis for departing from the *207 normal rule that "the standard must be proven by expert medical testimony," arises "where the asserted negligence consists of conduct so obviously wanting in reasonable medical skill and prudence that it may be so adjudged even by a layman." No such situation is presented by the proofs before us. They clearly required expert testimony and contained no warrant for the utilization of the doctrine of res ipsa loquitur. It is incontrovertible that laymen would not know what Levophed is, its purpose, whether its use was warranted, and its dangers. Moreover, the jury would be in no position to judge the conduct of the doctors and nurses in administering it.
In the case of Grantham v. Goetz, 401 Pa. 349, 164 A.2d 225 (Sup. Ct. 1960), the appellate tribunal approved the action of the trial court in granting defendant's motion for a "compulsory nonsuit" in a malpractice case against two doctors. The drug there used in treating plaintiff was also Levophed, intravenously administered. As stated in the opinion, the "drug is a blood vessel constrictor utilized to increase the blood pressure in cases of shock." Also, as in the case at bar, there was an infiltration of the drug "into the tissue surrounding the vein" and "surgery" and "grafting of skin" was required to repair the resultant damage. The court there said (164 A.2d, at p. 228):
"There isn't a scintilla of evidence in the record to establish how the drug escaped from the vein into the tissue. The testimony fails even to hint that any act of omission or commission on the part of either defendant caused this to happen. The claim is completely devoid of merit.
This issue is ruled by Donaldson v. Maffucci, supra [397 Pa. 548, 156 A.2d 835], and Robinson v. Wirts, 1956, 387 Pa. 291, 127 A.2d 706. In the latter case at pages 294, 295 of 387 Pa., at page 709 of 127 A.2d, Mr. Chief Justice Stern aptly said: `* * * no presumption or inference of negligence arises merely because the medical care or surgical operation terminated in an unfortunate result which might have occurred even though proper care and skill had been exercised, and where the common knowledge or experience of laymen is not sufficient to warrant their passing of judgment. In such cases the doctrine of res ipsa loquitur or of exclusive control may not be invoked, and expert testimony in support of the plaintiff's *208 claim is an indispensable requisite to establish a right of action.'"
See also, Woody v. Keller, 106 N.J.L. 176, 178 (E. & A. 1930). See generally, Annotation, "Physicians and surgeons: res ipsa loquitur, or presumption or inference of negligence, in malpractice cases," 82 A.L.R.2d 1262 (1962); 41 Am. Jur., Physicians & Surgeons, § 127.
Appellant further expresses criticism of the trial court's ruling in that the court made no specific reference to the voluminous Martland records pertinent to plaintiff's case. Specifically, plaintiff's counsel refers to those portions of the hospital records relating to the use of Levophed in connection with plaintiff's treatment, contending that they disclose insufficient "attention" by hospital personnel in connection with the infusion of the drug. This is solely counsel's conclusion. There is not an iota of evidence to support it or any proofs from which an inference to that effect might be drawn. Absent expert testimony, there was no proof that the extent or quality of care given plaintiff, as revealed by the hospital records, was inadequate. Without such evidence plaintiff failed to establish a prima facie case of negligence against defendant.
The judgment in favor of defendant is affirmed.