75 N.J. Super. 327 (1962)
183 A.2d 142
ANTHONY BARBIRE, PLAINTIFF-APPELLANT,
v.
ORLIN V. WRY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 4, 1962.
Decided June 26, 1962.
*329 Before Judges PRICE, SULLIVAN and LEWIS.
Mr. Arthur Uscher argued the cause for plaintiff-appellant (Messrs. Sher, Friedman, Kates & Uscher, attorneys; Mr. Uscher, of counsel).
Mr. Kevin M. O'Halloran argued the cause for defendant-respondent (Messrs. Morrison, Lloyd & Griggs, attorneys; Mr. O'Halloran, on the brief).
The opinion of the court was delivered by PRICE, S.J.A.D.
In a medical malpractice action plaintiff seeks to reverse a judgment entered on the verdict of a jury in favor of defendant in the Superior Court, Law Division.
Defendant is a physician licensed to practice his profession in this State since 1926. He testified that he engaged in "general practice" and "general surgery." Plaintiff was under professional treatment by defendant at the latter's office on May 26, 1959 when, plaintiff alleges, he was injured as the result of defendant's negligence. It was not disputed that plaintiff's injury had occurred when the metallic end of an irrigating syringe, used by defendant while treating plaintiff, became "separated" and forcibly struck the "middle" area of plaintiff's right ear.
*330 Preliminarily, we desire to note that in order that we might properly assess the factual situation we have examined the entire transcript of trial, many portions of which were omitted from the appendix. The basic circumstances surrounding the happening of the accident are clearly revealed by the record before us.
Plaintiff's ears required irrigation for the removal of "impacted wax in his ear canals," and defendant on the aforesaid date undertook to so treat him. In the course of such treatment defendant prepared a solution of soap and water in a receptacle and filled a syringe with the solution. Defendant had used the same syringe (which was received as an exhibit at the trial) "three to six times a week" for over 30 years. The syringe had a metal tip, handle and plunger and a pyrex barrel. The syringe had been repaired on December 12, 1957. However, defendant testified that he was unable to recall "whether the whole barrel" had been broken at that time but thought that the break was "in the glass portion, the exact nature" of which he was unable to describe.
We return to a description of the circumstances surrounding the happening of the accident. Defendant placed the end of the syringe in plaintiff's right ear and injected the solution. During the course of that procedure and after approximately one-half of the contents of the syringe had been so injected, the syringe broke and the metal tip forcibly struck the inner area of plaintiff's ear, causing physical injury for which he sought compensation. Defendant's personally dictated description of the accident as set forth in the records of the hospital, to which plaintiff was taken on defendant's advice, was as follows:
"Patient presented himself at the office stating that he was having difficulty in hearing out of both ears. Upon examination of the ears it was found that he had some soft, impacted wax in the right ear, completely obstructing the ear canal. And in the left ear it was less so. During the process of irrigating this ear, the right ear, an irrigating syringe separated itself, the finger portion releasing *331 itself from the barrel portion and the metallic end crashed into the middle ear. The patient immediately became vertigous [vertiginous], nurse grabbing him and laying him upon the floor. He was in a sitting position preceding this. He had pronounced vertigo, nausea and vomiting at least his entire supper. This process went on for about one hour at which time the patient appeared pale and sweaty. He did not go into any shock. It was thought best to remove him to the hospital for over-night observation." (Emphasis supplied)
Numerous reasons are assigned by plaintiff's counsel in support of his contention that the judgment entered on the aforesaid verdict of the jury should be reversed and a new trial granted. We find it unnecessary to recite them as the judgment herein must be set aside and a new trial granted because of error in the court's charge. A significant error, not raised by plaintiff, but which we deem so grave as to require the application of the "plain error" rule (R.R. 1:5-3(c)), is initially considered.
The trial court charged the jury in part as follows:
"Originally this was a combination malpractice and negligence action but the malpractice phase was not proved and was withdrawn, so you don't take into consideration at all any matter of malpractice, lack of a doctor exercising a degree of care, the standard of care that other doctors of similar training and circumstance would exercise. The medical phase of it has nothing to do with this case at all now, the malpractice item. It is purely a negligence action and plaintiff contends solely that Dr. Wry was negligent in the irrigation of his ear, in his conduct in irrigating and using that syringe and as a result of his negligence the plaintiff was injured. Dr. Wry, the defendant, denies that he was negligent and denies that he was the cause of that occurrence and the cause of that happening and the cause of the plaintiff's damages.
Therefore, the gist of this action and the law governing and controlling this action is the law of negligence and you have to know and understand what is negligence at law and what is the negligence that is applicable in a case of this type to determine that issue of liability in this case.
Now, generally speaking, in our relations with one another, each of us is obligated at all times to conduct ourselves with that degree of care under the circumstances then existing which an ordinary prudent person would exercise to avoid injury to ourselves and to avoid injury to others, and out of the general principle comes the law of negligence. So at law, as we are using it in this case, negligence may be defined as a failure to exercise that degree of care *332 in the given circumstances which a man or a person of ordinary prudence would exercise under similar circumstances. It may be said to be the doing of an act which an ordinary prudent person would not have done under the circumstances then existing, or the failure to do that which the ordinary prudent person would have done under the circumstances then existing.
In judging and determining whether or not a person is negligent we give the jurors a yardstick to measure by and the reason is when you are adjudicating and deliberating and determining the issue of whether or not Dr. Wry was negligent you don't judge what he did or whether or not he was negligent, whether or not he used the degree of care under the circumstances that you would have used under the same circumstances, or whether he failed to do something that you personally would have done under the circumstances. We give you a yardstick so that everybody is treated fairly and so you have a proper rule admeasurement, and that is, what would the ordinary prudent person have done under the circumstances, and you adjudicate and determine whether or not he was negligent on the standard of what would the ordinary prudent person have done under the circumstances. Then when you have made that determination  first you determine what was done in respect to the use of the syringe, what was done, and how was it done. You have heard the testimony all about that. Then you make a determination what would the ordinary prudent person under the same circumstances have done in connection with the use of such a syringe under such circumstances, so then you get the standard of care, not what any one of you personally would have done, because each of us vary in our degree of care. Some have quicker time reactions, quicker powers of observation, some of us do things more quickly than others, more rapidly. Some of us can observe a lot of things in a quick glance. Others are slow and do this, that, and the other thing and do a lot of things that you and I would not do, but we vary in what we each personally do. So we don't judge others by what we personally would do. You jurors make a determination, first of all, what was done in that office that night in respect to the use of this syringe. What did Dr. Wry do? Determine that from the evidence. You heard the testimony as to exactly what was done. Then you make a determination what would the ordinary prudent person have done in the use of that syringe as it was being used and prepared for use that night and as he used it. Then you make a determination did Dr. Wry fail to use that degree of care which the ordinary prudent person would have used in the use of that instrument that night. Did he do something that the ordinary prudent person would not have done in the use of that syringe that night? That is how you determine this question of negligence and that is how you apply the law of negligence." (Emphasis supplied)
*333 In resolving this appeal we deem it essential to outline the astounding course which, as revealed by the record, was pursued during the trial of the instant action.
The pretrial order, reflecting the action taken by the parties at the pretrial conference conducted by the same judge who ultimately tried the case, described the instant action as a "malpractice action." In presenting his contentions plaintiff outlined in paragraph 2 of the pretrial order the circumstances under which allegedly he had been injured. They were therein described substantially as they were developed later at trial. Plaintiff asserted in said paragraph that defendant was a physician and that his use of a defective syringe while treating plaintiff professionally resulted in plaintiff's injury. In paragraph 3 of the order defendant denied any "negligence or malpractice." It was stipulated in paragraph 4 of the order that defendant was a doctor and treated plaintiff as a patient on May 26, 1959. The issues were stated in paragraph 7 of the pretrial order to be negligence, malpractice, assumption of risk and damages.
Following the presentation of plaintiff's proofs, which included the testimony of an expert witness who was familiar with the type of syringe used by defendant on the day in question, defendant moved for the entry of a judgment of dismissal (R.R. 4:42-2(b)). During the course of the colloquy between the court and counsel, defendant's counsel stated:
"* * * there would appear to be no reason not to dismiss and find a judgment in favor of the defendant upon the malpractice count if that be an actuality, or perhaps I could put it another way, the malpractice phase or claim made by the plaintiff, upon the ground that there is no proof of lack of due care, that is, the failure which essentially is malpractice, in that it implies the failure of this particular defendant to follow the standards set forth by a person of his training and so forth. There has been no standard raised, testified to, and, therefore, I would suggest that a motion predicated on that phase of the proceedings should be granted."
The following then occurred:
*334 "THE COURT: Well, does the plaintiff want to withdraw the contentions of malpractice?
MR. USCHER: There is no malpractice.
THE COURT: You withdraw your contentions of malpractice?
MR. USCHER: Yes, sir.
THE COURT: That issue is out of the case."
Continuing the discussion and pressing his motion for a dismissal defendant's counsel, referring to Toy v. Rickert, 53 N.J. Super. 27 (App. Div. 1958), stated that he believed that plaintiff, in resisting defendant's motion, was planning to rely on the doctrine of res ipsa loquitur. Defendant's counsel then presented his reasons for contending, as he did, that the doctrine was inapplicable to the factual situation reflected in plaintiff's proofs.
Thereupon plaintiff's counsel asserted his belief that the doctrine of res ipsa loquitur should be applied and urged the denial of defendant's motion.
In an endeavor to make certain that his contentions were clearly before the trial court defendant's counsel then stated that he had "always been under the impression that the allegations of malpractice and negligence in all of these matters are synonymous and must be treated accordingly," and added: "If there is no evidence of malpractice, in other words, there is no evidence of negligence * * *." The court stated that it found such a contention "not very logical" and added:
"* * * the issue in this case is negligence and not malpractice for the reason that the plaintiff does not charge the doctor with the violation of any duty of care arising out of the standard of care or standard of practice of other physicians in the treatment of a clogged ear, but charges the defendant with negligence in that he used this instrument, this syringe, in irrigating the ear, which turned out to be defective in that it came apart and part of it was injected with some force into the plaintiff's ear. And he has no proof whatsoever of malpractice and no evidence of malpractice of violating any duty of care of a doctor, a medical practitioner, that other practitioners in similar practice and similar training would have observed or would have exercised, but charges him with negligence in the use of this instrumentality which caused the trauma that resulted in the injuries according to the testimony."
*335 The court then held that the doctrine of res ipsa loquitur was applicable and denied defendant's motion.
Following the presentation of defendant's proofs the court, basing its charge upon the aforesaid position taken by plaintiff's counsel, repeatedly and in elaborate detail, as above quoted, directed the jury to resolve the issue of the alleged negligence of defendant by determining "what would the ordinary prudent person have done under the circumstances." In so charging, the court not only attached no significance to the fact that defendant was a doctor, but in effect directed the jury to ignore it. For all that was said by the court in that connection the case might as well have been an action for negligence between laymen instead of a case in which the alleged negligent conduct occurred during the treatment of a patient by his physician.
Although plaintiff's counsel made no objection to the quoted portion of the charge (and in fact on oral argument before us reasserted his belief that this was not a "malpractice" action), it is clear that in justice to the plaintiff the verdict rendered against him following a charge to the jury which incorporated such a concept cannot stand.
Defendant's counsel at trial correctly recognized, as above stated, that an action against a physician by a patient for damages for injuries received by reason of the alleged negligence of the doctor in professionally treating the patient is, by its very nature, a malpractice action. On the argument of the appeal defendant's counsel forthrightly asserted the same viewpoint.
In Webster's New International Dictionary (2d ed. 1958), p. 1490, malpractice is defined as:
"The treatment of a case by a surgeon or physician in a manner contrary to accepted rules and with injurious results to the patient; hence, any professional misconduct or any unreasonable lack of skill or fidelity in the performance of professional or fiduciary duties." (Emphasis supplied)
In Ballentine, Law Dictionary (2d ed. 1948), p. 787, the writer defines the term malpractice in the following manner:
*336 "The failure of a physician or surgeon in the treatment of a patient to possess and employ that reasonable degree of learning, skill, and experience which ordinarily is possessed by others of his profession; or his failure to exercise reasonable and ordinary care and diligence in the exertion of his skill and the application of his knowledge, or to exert his best judgment as to the treatment of the case intrusted to him; or to bestow such reasonable and ordinary care, skill, and diligence as physicians and surgeons in the same neighborhood, in the same general line of practice, ordinarily have and exercise in like cases." (Emphasis supplied)
The fact that in some malpractice actions against a doctor (or dentist) "the standard of practice to which he failed to adhere must be established by expert testimony" and the res ipsa loquitur doctrine may not be invoked (Sanzari v. Rosenfeld, 34 N.J. 128, 135 (1961); Toy v. Rickert, supra, 53 N.J. Super., at pp. 32-34; Renrick v. City of Newark, 74 N.J. Super. 200, 204-207 (App. Div. 1962)), and in other malpractice actions, because of the nature of the alleged negligence, no such proof is necessary (Sanzari v. Rosenfeld, supra, at p. 140; Terhune v. Margaret Hague Mat. Hosp., 63 N.J. Super. 106, 111 (App. Div. 1960); Toy v. Rickert, supra, at pp. 33-34; and Steinke v. Bell, 32 N.J. Super. 67, 69 (App. Div. 1954)), does not change the nature of said actions. They remain malpractice actions. Regardless of the proofs required, such actions by a patient against a doctor (or dentist) indubitably are based upon the defendant's failure to comply with the duty which arises from the relationship existing between the parties. In such a case the defendant's alleged negligence as "an attending or treating physician" is the issue. Toy v. Rickert, supra, 53 N.J. Super., at p. 31; Young v. Crescente, 132 N.J.L. 223 (E. & A. 1944); 70 C.J.S., Physicians and Surgeons, §§ 40, 48 (1951); 41 Am. Jur., Physicians and Surgeons, §§ 78-79 (1942). The pertinent decisions recognize that while ordinarily the applicable standards in such cases are established by expert testimony, situations exist in which the jury may "supply the applicable standard of care" and thus "obviate the necessity for expert testimony relative *337 thereto." Sanzari v. Rosenfeld, supra, 34 N.J., at p. 141; Clark v. Wichman, 72 N.J. Super. 486, 496 (App. Div. 1962). Cf. Becker v. Eisenstodt, 60 N.J. Super. 240, 246 (App. Div. 1960).
However, in the case at bar, in connection with our assessment of the portion of the charge under scrutiny, it is imperative that we again note that it had its genesis in the aforesaid position taken by plaintiff's counsel following the presentation of his client's proofs. We conclude that the nature of the professed concession was such that it cannot control our resolution of this appeal as above expressed.
Although under the applicable decisions in this State an attorney has implied authority to "waive technical advantages and formalities necessary or incidental to the management of the suit and which affect only procedure," he may not do so in reference to the "cause of action itself." Mueller v. Eucenham, 33 N.J. Super. 156, 161 (App. Div. 1954); State v. Mulvaney, 21 N.J. Super. 457, 462 (App. Div. 1952); State v. Graham, 19 N.J. Super. 70, 74 (App. Div. 1952). Even as to "procedural determinations" of counsel "the rule is not an absolute one and is to be applied rationally and with fair recognition of the fact that justice to the litigants is always the polestar." Martindell v. Martindell, 21 N.J. 341, 349 (1956).
Under the circumstances it is of no moment how this action was labeled by plaintiff's counsel during the course of the trial. The standard of care to be observed of necessity was that applicable to a doctor, not a layman. The standard was not subject to change dependent upon the necessity or lack of necessity of the presentation of expert testimony. It is clear from the record before us that the misconception in the instant case arose from a mistaken belief that the nature of the requisite proof changed the character of the action. Not so. Whether or not a jury may resolve the issue of negligence without the aid of medical experts, a defendant doctor remains charged with a failure *338 properly to exercise reasonable and ordinary care and diligence in the exertion of his skill "as an attending or treating physician." (Emphasis supplied.) Toy v. Rickert, supra, 53 N.J. Super., at p. 31. He does not lose his identity as a "treating physician" whether a complex diagnosis is alleged to have been erroneous (in which case a jury, absent expert testimony, is not competent to determine the standard by which to measure the defendant's conduct, Sanzari v. Rosenfeld, supra, 34 N.J., at pp. 134-135), or the negligent professional act "is not related to technical matters peculiarly within the knowledge of medical * * * practitioners" (emphasis supplied), and "the jury, from its fund of common knowledge, assays the feasibility of possible precautions which the defendant might have taken to avoid injury to the plaintiff." Sanzari, supra, at p. 142. In neither case may the conduct of "the ordinary prudent person" (without reference to the professional relationship existing between plaintiff and defendant) be the criterion merely because counsel elects to refrain from describing the suit as a malpractice case. Regardless of his characterization of the instant suit, the negligence, if any, is a "medical error." Becker v. Eisenstodt, supra, 60 N.J. Super., at p. 246; Prosser, Torts (2d ed. 1955), § 42, at p. 210.
The record reveals that the trial court again referred to the nature of the case in its orally delivered opinion rejecting plaintiff's application for a new trial. Plaintiff's application therefor was based on several grounds, including an assertion that at least two jurors, during the evening preceding the close of the case, saw portions of a television program dealing with a malpractice case against a doctor in which program, it was asserted, certain statements favorable to physicians and deploring such suits were made. This event was the subject of extended post-trial interrogation of the jurors by the court in the presence of counsel. The court refused to hold that such happening should vitiate the verdict. We note that in so holding the court said:
*339 "Furthermore, we have to bear in mind that this case didn't go to the jury on malpractice at all. It went to the jury as a pure negligence case. There was a doctor involved but that is merely a distinction without a difference; I don't think they would rely on fine technical distinctions. There was a doctor involved, a charge of negligence in the treatment of a patient. Technically it was not a malpractice case and I think I made it very clear in the charge to the jury that they were getting this case not on malpractice but on pure negligence.

* * * * * * * *
As far as the charge we are thoroughly satisfied the jury was clearly charged with the law of the case, that it was purely negligence. In fact, you [plaintiff's attorney] withdrew the malpractice phase of the case during the course of the trial and before the conclusion or at the conclusion of the trial, wherein you were in accord with the Court that the case should go to the jury solely on negligence and I am thoroughly satisfied that there was no direct evidence of negligence. The only way the jury could have found negligence in this case would be under the doctrine of res ipsa." (Emphasis supplied)
In view of our reversal of the judgment herein on other grounds, we find it unnecessary to deal with the plaintiff's contention, vigorously asserted on appeal, that the exposure of certain of the jurors to the aforesaid television program justifies a reversal. It is significant, however, to note that it was a program dealing with alleged malpractice of a doctor which plaintiff's counsel, despite his aforesaid declaration at trial, stresses as a corrupting influence in connection with the adverse jury verdict.
The judgment of the trial court is reversed and the case remanded for a new trial. No costs are allowed on this appeal.