PASSAIC VALLEY SEWERAGE COMMISSIONERS, A BODY POLITIC AND CORPORATE, PLAINTIFF-APPELLANT, v. GEO. M. BREWSTER & SON, INC., A CORPORATION OF NEW JERSEY; KUCHAR BROTHERS, A CORPORATION OF NEW JERSEY; TERMINAL CONSTRUCTION CORP., A CORPORATION OF NEW JERSEY; JOSEPH MIELE CONSTRUCTION CO., INC., A CORPORATION OF NEW JERSEY; PHILIP R. SALVATORE, T/A C. SALVATORE AND SONS; AND LaFERA CONTRACTING CO., INC., A CORPORATION OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued April 25, 1960—Decided June 6, 1960.

596

Mr. *Thomas E. Durkin, Jr.*, argued the cause for plaintiff-appellant.

Mr. *William A. Wachenfeld* argued the cause for all defendants-respondents (*Mr. Wachenfeld,* attorney for defendant-respondent LaFera Contracting Co., Inc.).

Mr. *John J. Breslin, Jr.*, also argued the cause for defendant-respondent Geo. M. Brewster & Son, Inc. (*Messrs. Breslin and Breslin,* attorneys).

Mr. *Joseph A. Hayden* also argued the cause for defendant-respondent Kuchar Brothers (*Messrs. Clancy and Hayden,* attorneys).

Mr. *Walter D. Van Riper* also argued the cause for defendant-respondent Terminal Construction Corp. (*Messrs. Van Riper and Belmont,* attorneys).

*Mr. Joseph Harrison* also argued the cause for defendant-respondent Joseph Miele Construction Co., Inc.

*Mr. Albert G. Besser* also argued the cause for defendant-respondent Philip R. Salvatore.

The opinion of the court was delivered by

HALL, J. The question before us is whether the trial court, under the circumstances present, properly dismissed the complaint following plaintiff's opening statement to the jury and then denied an application to reopen.

Geo. M. Brewster & Son, Inc. ("Brewster") was the low bidder, at $4,998,450, for certain construction work at plaintiff's Newark Bay pumping station and was awarded the contract in the fall of 1956. The other bidders were Kuchar Brothers ("Kuchar") at $5,092,650 and Terminal Construction Corp. ("Terminal") at $5,125,180. Two weeks after the formal contract was executed Brewster subcontracted about 40% of the work to Kuchar. Some 20 days later Brewster entered into a joint venture for the remainder with LaFera Contracting Co., Inc. ("LaFera"), Joseph Miele Construction Co., Inc. ("Miele"), and Salvatore, in which Brewster and LaFera each had a one-quarter interest and Salvatore and Miele together, one-half. Two days thereafter a further agreement was entered into whereby Terminal received a 30% interest in the joint venture.

Brewster was not paid the two final monthly installments under the contract, including the retained percentage on the entire job, amounting to some $589,000, and sued plaintiff therefor in the Law Division, Bergen County. By the pretrial order in that suit made in June 1959, plaintiff's answer was amended to allege that Brewster and the other five contractors named above had conspired and colluded "to adversely influence the bids submitted" and "to cause improper receipt of open bids" and that Brewster was consequently not entitled to any profit on the job. The order

contained no statement of factual contentions in support of this conclusion.

Within a week plaintiff instituted the instant action with an Essex County venue. Beyond setting forth the chronology of contractual events just summarized, the complaint alleged that the Kuchar subcontract was in the amount of $2,196,000 for work which Kuchar's bid had priced at $3,214,000 and for which Brewster was to receive $3,249,000 pursuant to its successful bid and that plaintiff's consulting engineers had, some time prior to the receipt of the bids, estimated the approximate cost of the whole job at $2,000.000. The pleading charged that all six defendants conspired, colluded and arranged before the submission of bids that the bids "were to be not unknown, one to the other," in advance of submission and arranged by improper and unlawful means that they would not be competitive, that the subsequent subcontract and joint venture were in fulfillment of the pre-arranged design and that the profit derived as a result of the scheme "was an illegal, improper, and unconscionable profit, grossly excessive * * * and the result of the arrangement arrived upon by the collusion as aforesaid * * *." Damages of $2,500,000 were sought against all defendants, apparently on the theory of recovery of the alleged illegal profit.

The answers filed amounted to a general denial of any wrongdoing and also affirmatively asserted that the complaint failed sufficiently to particularize a claim of fraud and to set forth facts sufficient to constitute a cause of action. Shortly thereafter, Brewster's motion to consolidate this suit with the contract action, for trial in Bergen County, was granted.

Obviously the gravamen of the tort complaint deeply involved the public interest and at the same time was a most serious charge to make. If it was supportable by proof, from the civil aspect alone, the taxpayers of the municipalities served by the Commission had been badly mulcted. And, from the defendants' point of view, the accusation made

was equally important. If there was no basis for it, they were entitled to complete exculpation. From all standpoints, and especially that of plaintiff, which had the burden and represented the public interest, the case called for thorough preparation, both on the facts and law, including appropriate use of our discovery, motion and other procedures before trial. But the litigation did not take that course. Plaintiff sought no discovery of any kind. Although plaintiff's answers to interrogatories propounded by defendants produced nothing in amplification of the general charge of collusion and defendants' answers to the complaint had asserted it did not set forth a cause of action, no motion of any kind was made. More important, no pretrial conference was held, but instead, a few days before the trial (which came on in October 1959, a little more than two months after the last answer was filed), a consent order was entered reciting "the purpose of the parties to avoid" such a conference. The order then proceeded to amend the pretrial order in the contract suit by setting up an additional defense of improper performance by Brewster in certain particulars (with which we are not concerned) and stating plaintiff's and defendants' contentions in the tort action by nothing more than a parroting of the broad allegations of the complaint and answers.

The failure of the court to hold a pretrial conference (*R. R.* 4:29–1(*a*)), the wishes of counsel to the contrary notwithstanding—and this case called for a particularly comprehensive one—cannot be overlooked. At this late date, it should be unnecessary to reiterate the vital importance and compulsory nature of the conference procedure, its purposes, benefits and effects. *Cf. Schlossberg v. Jersey City Sewerage Authority,* 15 *N. J.* 360, 369–371, 374 (1954). Thorough exploration of the detailed contentions of the parties and proper framing and explicit expression of the factual and legal issues, with appropriate amendment of the pleadings if necessary, and the possibility of determination of some of the issues in advance of trial by motion, at the

direction of the court if need be, might well have avoided the situation now before us for review and enabled a just and expeditious determination of the controversy long since.

Plaintiff admitted in the opening to the jury that it had no direct proof of the claimed collusive agreement and that it must rely entirely on circumstantial evidence and inferences claimed to be legitimately deducible therefrom. The complaint is ambiguous. One cannot tell whether the recitals of the closeness of the bids and the details of the subsequent subcontract and joint venture are intended as mere background or, either standing alone or in conjunction with other facts, are relied on as evidence of collusion. If the latter, questions of relevancy arise. The relevance of the prior estimate of cost made by the consulting engineers is also involved. (Material furnished us by way of consent supplement to the record casts doubts, but it is matter of defense and in any event we can be concerned only with the state of the record at the conclusion of the matter in the trial court.) It is also not clear whether the allegations of excessive and unlawful profit were set forth only to establish a *quantum* of damages or also as a basis for an inference of a collusive agreement if coupled with proper proof that the job could fairly have been done for a very considerably lower figure. The basis of the general charge of conspiracy or arrangement to suppress competitive bidding seems not necessarily, on the face of the complaint, to be limited to the allegations just referred to. The opening statement of plaintiff's counsel did not in any way expand upon the complaint and our own interrogation at the oral argument leaves us still uncertain as to just what facts or events he relied on and expected to prove as giving rise to legitimate inferences to make out a *prima facie* case. However, in the light of the view we take of the precise question before us—and we look at it as a procedural one—it is unnecessary and indeed impossible, under the particular circumstances to be later noted, for us to consider further, as we ordinarily would in a situation of this type, whether plaintiff

did or can make out a case and we intimate no opinion thereon.

At the consolidated trial, counsel for Brewster addressed the jury first on its contract claim. The opening is not printed in the appendix so we do not know whether he adverted at all to the defense of collusive bidding asserted in that suit. Plaintiff's counsel then proceeded to open both in defense of the contract suit and as to the tort action. Consideration of the trial judge's challenged ruling cannot be had apart from what transpired during the opening.

As it relates to the tort action, it occupies about seven printed pages in the appendix. During its course plaintiff's counsel was interrupted six times by objections, on some occasions by counsel for Brewster alone and on others by all six of the defendants' attorneys. Argument on these objections occupies more than half of the seven pages, not counting two side bar conferences which are not reported in the transcript. Counsel began by attempting to outline to the jury "a brief chronology of events which quite probably cause us to be here today," as "background material."

After the first six words of the chronology, objection was made on the ground of remoteness, which the court sustained. A new start along the same line for the same purpose resulted in another objection after the first 13 words. A side bar conference followed after which plaintiff's counsel was allowed to proceed along the line he had begun. He then outlined the receipt of the bids and commenced to say that the estimate of the consultant "at the time that the bids were received was—" (the complaint had spoken of such an estimate made prior to that time). All six defendants objected on the ground such an estimate was not binding on a bidder unless previously known to him. The court directed that no reference to any engineer's estimate be made and significantly stated: "It is not necessary in your opening, to refer to specific pieces of testimony or evidence specifically, as you are referring to this piece."

Counsel then went on for eight printed lines to give the amount of the bids and apparently intended to make some comment thereon, the nature of which is unknown since it was immediately interrupted by an objection, the resolution of which was apparently had at an unreported side bar conference which followed. Resumption of the statement along another line was again interrupted three lines later by a further trivial objection which the judge overruled. Counsel then told the jury of the subcontract and joint venture subsequent to the award of the contract to Brewster and went on to say that plaintiff had no direct proof of any arrangement between defendants but that the jury could legitimately infer from the facts "as we set them forth very specifically for you * * * that a thing or things which in the ordinary course of events should not have occurred but in effect did occur * * *." A final objection was made at this point on the ground that this amounted to "summing up" and the judge concurred, stating that such should be left to the charge of the court. Counsel then concluded that the facts which he would prove "are the facts that we outlined very briefly here for you now." This last reference is somewhat incomprehensible to us since, in a case which had to rest entirely on inferences from facts or events, plaintiff had been thwarted at almost every turn in trying to outline facts from which he claimed inferences could be drawn and had been advised by the court that it was not necessary to refer to specific pieces of evidence.

After the noon recess, defendants moved that the court "direct a verdict" in their favor on the ground that all which remained in the statement was the fact that the three bidders, Brewster, Kuchar and Terminal, had later divided the work after Brewster received the contract and that fact alone was not enough to make out a fraud and a conspiracy. In answer, counsel for plaintiff pointed out other factors, which he had referred to in his opening, or had tried to, which he claimed also had inferential bearing on the charge and in addition referred to two items which he

had not mentioned in the opening, namely, the consulting engineers' figure as a proper amount for bid prices (he further represented to us at the oral argument that expert testimony was available to the effect that the engineers' figure was a fair price for the work) and the very considerably lesser price at which Kuchar agreed to do the subcontracted work than it had set forth in its bid to the Commission. Kuchar's counsel retorted that such was not in fact true, but, of course, that would be a matter of defense and had no proper place in an argument on the sufficiency of a plaintiff's opening. The court then granted the motion, both with respect to the entire tort action and the defense in the contract action, on the ground that insufficient facts had been stated to make out the cause of action asserted.

Plaintiff then moved to reopen. There was immediate objection on the basis that the application came too late and amounted to "taking more than one bite at the apple." The court precluded counsel from making any argument or stating his reasons in support of the motion and denied it, saying that he would not exercise his discretion to permit reopening, particularly since counsel had told him before the afternoon session commenced (apparently at a conference in chambers) that he was going to stand on the opening made without addition. It should be noted that plaintiff's counsel made no request, as he should have and as a trial court must allow, to place on the record what he would have said had he been permitted to reopen, for the information of a reviewing tribunal in aid of a final determination on appeal. Cf. R. R. 4:44–3. It may be added Brewster's contract suit was settled the next day on a consent judgment basis for slightly less than had been demanded, with the stipulation that it could not be reopened if the disposition of the tort action was reversed, but that it was to have no effect on that cause. Plaintiff's appeal is consequently directed only to the dismissal of its suit and does not include the suppression of the collusion defense in the contract action.

██ Opening statements are mandatory under our practice, unless the pretrial order provides otherwise. *R. R.* 4:44–1. The fundamental purpose thereof is a most important factor in considering a question of legal adequacy. That purpose is "to do no more than inform the jury in a general way of the nature of the action and the basic factual hypothesis projected, so that they may be better prepared to understand the evidence." *Farkas v. Middlesex County Board of Chosen Freeholders,* 49 *N. J. Super.* 363, 367–368 (*App. Div.* 1958); *Shafer v. H. B. Thomas Co.,* 53 *N. J. Super.* 19, 26 (*App. Div.* 1958). The judge already knows what the case is all about from the pretrial order. Counsel must be summary and succinct. Proposed evidence should not be detailed and it will be little more than an outline, quite frequently a fairly indefinite one by reason of the nature of the case. In no sense can it be argumentative or have any of the attributes of a summation. Nothing must be said which the lawyer knows cannot in fact be proved or is legally inadmissible. *Paxton v. Misiuk,* 54 *N. J. Super.* 15, 20 (*App. Div.* 1959); *Shafer v. H. B. Thomas Co., supra.*

██ Our practice has always permitted, however, dismissal of a complaint on a plaintiff's opening, *Kelly v. Bergen County Gas Co.,* 74 *N. J. L.* 604 (*E. & A.* 1907), and even a direction of a verdict for a plaintiff after both openings. *Carr v. Delaware, Lackawanna and Western Railroad Co.,* 78 *N. J. L.* 692 (*E. & A.* 1910); *Alexander v. Manza,* 132 *N. J. L.* 374 (*E. & A.* 1945); *Ross v. Orr,* 3 *N. J.* 277 (1949). But even prior to the introduction of the new practice in 1948, the then nonsuit would only be granted where it was clearly evident that no cause could be made out after accepting as true all facts stated and all proper inferences to be drawn therefrom. *Weidenmueller v. Public Service Interstate Transportation Company,* 129 *N. J. L.* 279 (*Sup. Ct.* 1942); *Rotman v. Levine,* 131 *N. J. L.* 205 (*E. & A.* 1944).

While the practice still exists, we have become even more cautious since 1948, and properly so, because such a dismissal is now a final adjudication on the merits (*R. R.* 4:42-2(*b*)), precluding the commencement of another action which was permissible under the former nonsuit practice. *Reti v. Vaniska, Inc.*, 8 *N. J. Super.* 275, 278 (*App. Div.* 1950). Moreover, there is little reason for the use of this kind of motion today with our pretrial procedure, discovery and summary judgment and other motion practice, which, when properly and effectively used, can clear away and settle in advance of actual trial most matters formerly sought to be raised on openings. Any purpose the opening served of specifying the issues has long since disappeared with the advent of the pretrial order. Even a reason for more liberal use of the device given in some jurisdictions not having our modern procedural methods, *e. g.,* see *Best v. District of Columbia*, 291 *U. S.* 411, 415, 54 *S. Ct.* 487, 78 *L. Ed.* 882, 885 (1933), that it "is convenient in saving time and expense by shortening trials," has, especially in these days of heavily congested calendars, little appeal in New Jersey where the parties have the fullest opportunity to determine such issues before the valuable time of judicial personnel and lawyers and the money of litigants and the public is expended in preparation, summoning witnesses and jurors and commencing the actual trial.

 While this court has not previously had the opportunity to speak on the matter, recent decisions in the Appellate Division have been most positive in expression, with which we thoroughly agree. "Our present practice does not favor a dismissal on plaintiff's opening to the jury. A motion for dismissal should never be granted unless the facts are undisputed and the law free from doubt." *Farkas v. Middlesex County Board of Chosen Freeholders, supra* (49 *N. J. Super.,* at *page* 367). "* * * [T]he trial court is justified in exercising a most liberal discretion in disposing of the matter. The case is rare indeed where the interests of justice will not be served by withholding action

on or by denying the motion and receiving the plaintiff's proof." *Sherman v. Josephson,* 44 *N. J. Super.* 419, 426 (*App. Div.* 1957). See also *Nelson v. Great Atlantic and Pacific Tea Co.,* 48 *N. J. Super.* 300 (*App. Div.* 1958).

■■ Such a motion admits the truth of all the facts outlined and gives a plaintiff the benefit of every possible favorable inference which can be logically and legitimately deduced. Study of the handful of cases, both before and after 1948, in which dismissals or directed verdicts in openings have been sustained, contrasted with the large number over the years in which the granting of such motions has been reversed or the denial thereof affirmed, supports the conclusion that dismissal action is appropriate only when legally determinative facts are in effect stipulated or are admittedly uncontrovertible and the result thereby becomes inevitable as a matter of law. *Ross v. Orr, supra* (3 *N. J.* 277); *Pitaresi v. Appello,* 20 *N. J. Super.* 432 (*App. Div.* 1952), affirming 17 *N. J. Super.* 278 (*Law Div.* 1952); *Corbett v. Warner,* 137 *N. J. L.* 281 (*Sup. Ct.* 1948); *Rotman v. Levine, supra* (131 *N. J. L.* 205); *Alexander v. Manza, supra* (132 *N. J. L.* 375); *Lake v. Rosenberg,* 131 *N. J. L.* 19 (*Sup. Ct.* 1943); *McCourt v. Public Service Coordinated Transport,* 122 *N. J. L.* 419 (*E. & A.* 1939); *Taggart v. Bouldin,* 111 *N. J. L.* 464 (*E. & A.* 1933); *Berkman v. Cohn,* 111 *N. J. L.* 229 (*E. & A.* 1933); *Lennon v. Atlantic City Railroad Co.,* 107 *N. J. L.* 297 (*E. & A.* 1930); *Carey v. Gray,* 98 *N. J. L.* 217 (*E. & A.* 1922). It is difficult to conceive of a case in which such a motion may now properly be granted where the same result would not have followed by the use of the more appropriate and desirable means of a motion made prior to trial for summary judgment, for judgment on the pleadings or to dismiss for failure to state a claim.

■ In a case like the instant one, where a plaintiff must rest on circumstantial evidence and inferences, though perhaps theoretically possible, it will be a most unusual situation where a court can properly dismiss and thereby absolutely

preclude the testimony of witnesses from which some favorable inference might be drawn. (Of course, the court should be considerably stricter in assessing the sufficiency of the case at the end of a plaintiff's evidence. See *Farkas v. Middlesex County Board of Chosen Freeholders, supra* (49 *N. J. Super.*, at *page* 367)). The opening here was not as good as it could have been. As previously indicated, other possibly relevant factors set forth in the complaint or referred to in the later argument on the motion and in argument before us were not mentioned. (In passing, it should be stated there is no merit to plaintiff's contention that a dismissal cannot be sustained on appeal if the complaint (or the pretrial order), not referred to in the opening, sufficiently states a cause of action. *Taggart v. Bouldin, supra* (111 *N. J. L.* 464); *Carey v. Gray, supra* (98 *N. J. L.* 217)).

But more important, counsel was unnecessarily interrupted and harassed and prevented from saying a good part of what he should have been permitted to say. He was also admonished by the court that it was not necessary to refer to specific pieces of evidence, although in order sufficiently to outline this kind of a case it is well nigh vital to state the specific acts or events from which the claimed inferences are said to arise. He said during the course of the opening that he was unnerved by the many interruptions, which is not to be wondered at and may well have caused disorganization of mind and lapse of memory as to matters he intended to state. *Cf. Donnelly v. Paramount Organization, Inc.,* 109 *N. J. L.* 57, 59 (*E. & A.* 1932). The result was that he was quite improperly prevented from making the kind of an opening which the nature of the case indicated (without, of course, including anything in the nature of argument) and then made to suffer the permanent dismissal of the case on the basis that he had failed to have said enough. Under all these circumstances and having regard to the fact that a public matter is involved, we are convinced that justice would not be served by sustaining the dismissal.

■ Moreover, there is clear error requiring reversal in the trial court's denial of plaintiff's formal motion to reopen made after the dismissal had been ordered. The result is so final, and that only on a narrative outline of a case and without any evidence having been heard, that a lawyer must be given every requested opportunity to attempt to correct or supply any deficiency the court has found. It would be a most exceptional case in which the failure to allow it would not amount to an abuse of discretion, no matter how unwarrantedly confident the attorney may have been up to that point in the opening as made. This is so whether the request comes before or after the court has ruled on the motion to dismiss. *Home Loan Co. v. Scanlon*, 120 *N. J. L.* 544 (*Sup. Ct.* 1938); *Donnelly v. Paramount Organization, Inc., supra* (109 *N. J. L.*, at *page* 59); *Kelly v. Bergen County Gas Co., supra* (74 *N. J. L.*, at *page* 605).

We do not conceive, however, that the reversal should extend to defendants Miele, Salvatore and LaFera, who did not submit bids and against whom plaintiff's counsel admitted at the oral argument he had no evidence whatever to support a case. The judgment will therefore be affirmed as to these defendants and reversed as to defendants Brewster, Kuchar and Terminal. No costs to any party. The case against the remaining defendants is remanded to the trial court with permission to any party to seek and complete such discovery and to make such motions as they may be advised within 90 days of the coming down of the mandate and with the direction that a pretrial conference be held and the case tried as soon as practicable thereafter.

*For affirmance in part and reversal in part*—Chief Justice WEINTRAUB, and Justices BURLING, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*Opposed*—None.