**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4782-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

AZIM BROGSDALE, a/k/a HAZIM
BROGSDALE, AZIM LANG,
HAZIM M. BROGSDALE,
and AZIM N. BROGSDALE,

    Defendant-Appellant.

_____

Submitted December 13, 2018 – Decided August 8, 2019

Before Judges Simonelli and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 13-01-0200.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele A. Adubato, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Barbara A. Rosenkrans, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Azim Brogsdale appeals from the April 28, 2017 amended judgment of conviction and sentence he received for murder, robbery, and related crimes. We affirm defendant's convictions and remand for resentencing.

I.

The following facts are derived from the record. On February 17, 2012, co-defendant Haroon Perry, co-defendant Marquise Hawkins, and Jaquill Waters decided to commit a robbery. The trio drove to pick up defendant, then sixteen years old, who agreed to participate in the robbery. Perry drove the car with defendant in the front seat. Hawkins and Waters sat in the back seat.

At around 10:30 p.m., sixteen-year-old K.W., and three friends, D.A., N.W., and K.N., all teenagers, were walking on an Irvington sidewalk.[1] Defendant and one of his co-conspirators, while armed, exited the vehicle and approached the group. Their faces were partially covered. The two announced a robbery and ordered the victims to empty their pockets. The car containing the two other co-conspirators was nearby.

D.A. gave the assailants lip balm, gum, and a dollar, while N.W. gave them his cell phone. The victims then attempted to flee. Hawkins, who was in

---

[1] We use initials to protect the identity of the victims.

the car yelled, "[g]et the guy in the yellow jacket" or "watch the one with the yellow coat." K.N., who was wearing a yellow jacket, was running from the scene.

At that point, defendant and the co-conspirator on the sidewalk began shooting at the fleeing robbery victims. One of the shots struck K.W. in the back. He was discovered with a faint pulse by a police officer responding to a report of gunfire. Despite resuscitation attempts, K.W. died a short time later.

D.A. and N.W. were taken by detectives to the prosecutor's office to give recorded statements. They gave descriptions of the assailants that differ in some respects and do not fully match defendant's appearance.

The investigation led to Hawkins, who turned over N.W.'s stolen cell phone. A detective later interviewed Perry, who identified defendant as having been involved in the robbery.

On March 30, 2012, D.A. and N.W. were brought back to the prosecutor's office for photo array identifications. They were kept in separate rooms at all times, accompanied by their mothers, and did not have an opportunity to interact with one another. Both D.A. and N.W. identified defendant's picture from a photo array as one of the assailants. D.A. stated that the photograph depicted the person who killed K.W.

A-4782-16T4

As a result of the identification, on April 9, 2012, the State issued a juvenile complaint against defendant. He was not arrested until four months later because he could not be located by detectives. On December 3, 2012, the Family Part granted the State's application to waive jurisdiction over the charges against defendant and transferred the matter to the Law Division.

A grand jury charged defendant and the co-defendants with: second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1 (count one); first-degree robbery, N.J.S.A. 2C:15-1 (counts two, three, four and five); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (count six); first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3 (a) (1) and (2) (count seven); first-degree purposeful or knowing murder, N.J.S.A. 2C:11-3(a)(1) and (2) (count eight); second-degree unlawful possession of two guns, N.J.S.A. 2C:39-5(b) (counts nine and ten); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count eleven).

In June 2015, Perry entered a plea of guilty to aggravated manslaughter, conspiracy, and two counts of robbery. As part of the plea agreement, he testified at defendant's trial. In exchange, the State agreed to recommend a twenty-year term of imprisonment followed by a five-year period of parole supervision and to allow Perry to argue for a seventeen-year sentence.

Defendant was tried separately from his remaining co-defendant. At trial, the State provided testimony from the surviving robbery victims, an independent eyewitness, law enforcement personnel, the State medical examiner, and Perry. D.A., N.W., and Perry identified defendant as the shooter who killed K.W. During the victims' testimony, defense counsel elicited several discrepancies in their description of their assailants, and pointed out that some of the details of their descriptions did not match defendant's personal characteristics.

On January 26, 2017, the jury found defendant guilty on all counts. He filed a motion for a new trial and judgment of acquittal notwithstanding the verdict, arguing the court erred by limiting his cross-examination and refusing to instruct the jury on third-party guilt. The court denied the motion.

At sentencing, the court considered the aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1. The court found aggravating factors: (a) "[t]he nature and circumstances of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner" (factor one), N.J.S.A. 2C:44-1(a)(1); (b) the risk of re-offense (factor three), N.J.S.A. 2C:44-1(a)(3); (c) the "substantial likelihood that the defendant is involved in organized criminal activity" (factor five), N.J.S.A. 2C:44-1(a)(5); (d) the extent of defendant's past criminal record and the

seriousness of those offenses (factor six), N.J.S.A. 2C:44-1(a)(6); and (e) the need for criminal deterrence (factor nine), N.J.S.A. 2C:44-1(a)(9). The court found no mitigating factors.

The court sentenced defendant to an aggregate term of fifty-five years with a parole ineligibility period of fifty years and three months. The court: (1) merged count one with counts two through five and on count two imposed a sentence of fifteen years with an eighty-five-percent period of parole ineligibility; (2) imposed concurrent terms of fifteen years with an eighty-five-percent period of parole ineligibility for counts three, four, and five; (3) merged counts six and seven with count eight on which it imposed a sentence of forty years, with a thirty-year mandatory minimum, and subjected the remaining ten years to an eighty-five-percent period of parole ineligibility, for a total parole bar of thirty-eight and a half years[2]; (4) merged count eleven with count eight;

---

[2] There is a discrepancy between the sentencing transcript and the amended judgment of conviction as to whether the court intended to impose: (1) a thirty-four-year parole disqualifier on count eight by subjecting the forty-year base term to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, or; (2) a thirty-eight-and-one-half-year parole disqualifier by imposing the mandated thirty-year parole bar under N.J.S.A. 2C:11-3, plus an additional eight-and-one-half years parole-bar pursuant to NERA on the ten remaining years of the forty-year sentence. This should be clarified on remand.

A-4782-16T4

and (5) on counts nine and ten imposed concurrent sentences of eight years with a four-year period of parole ineligibility.

This appeal followed. Defendant raises the following arguments for our consideration:

> POINT I
>
> THE UNFAIR RESTRICTIONS PLACED BY THE TRIAL COURT IN THE PRESENTATION OF HIS CASE DEPRIVED DEFENDANT OF HIS CONSTITUTIONAL RIGHTS OF DUE PROCESS, RIGHT OF CONFRONTATION AND RIGHT TO A FAIR TRIAL.
>
> POINT II
>
> THE TRIAL COURT ERRED IN REFUSING TO CHARGE THE JURY ON THIRD PARTY GUILT AT DEFENDANT'S REQUEST.
>
> POINT III
>
> COMMENTS MADE BY THE PROSECUTOR DURING THE SUMMATION CONCERNING DEFENDANT'S ARREST FOUR MONTHS AFTER THE ISSUANCE OF THE ARREST WARRANT WAS GROSSLY PREJUDICIAL AND DEPRIVED DEFENDANT OF A FAIR TRIAL.
>
> POINT IV
>
> DENIAL OF THE DEFENDANT'S MOTION FOR NEW TRIAL WAS ERROR.

7

POINT V

THE AGGREGATE SENTENCE OF FIFTY-FIVE
(55) YEARS WITH [EIGHTY-FIVE PERCENT]
PAROLE INELIGIBILITY WAS EXCESSIVE AND
SHOULD BE MODIFIED AND REDUCED.

POINT VI

THE AGGREGATE ERRORS DENIED
DEFENDANT OF A FAIR TRIAL.

II.

Defendant argues that the court improperly restricted his counsel from

delving into the discrepancies in D.A. and N.W.'s out-of-court descriptions of

their assailants during his opening statement. "[A]n opening statement should

set forth only a succinct statement of what a party proposes to prove." State v.

Tilghman, 385 N.J. Super. 45, 55 (App. Div. 2006) (quoting State v. Stamberger,

209 N.J. Super. 579, 581 (Law Div. 1985)). "The fundamental purpose of

opening statements is to do no more than inform the jury in a general way of the

nature of the action and the basic factual hypothesis projected[.]" Ibid. (quoting

Passaic Valley Sewerage Comm'rs v. Geo. M. Brewster & Son, Inc., 32 N.J. 595,

605 (1960)). "Counsel is also cautioned that 'the proposed evidence should not

be detailed,' and when evidence is addressed, it should appear as little more than

a 'fairly indefinite' outline." Ibid. (quoting Passaic Valley Sewerage Comm'rs, 32 N.J. at 605).

During the opening statement, defendant's counsel detailed various discrepancies in the victims' descriptions of the gunmen during the investigation. As the opening statement continued, the assistant prosecutor suspected defendant's counsel was reading from a transcript of testimony of one of the witnesses. The State objected, arguing that it was improper for defense counsel to read from a transcript not yet in evidence. Although defense counsel denied reading from a transcript, the court sustained the objection, concluding that the opening statement went "way beyond opening comments" and was instead "a summation, as opposed to comments where we normally indicate to the jury what we intend to prove."

"New Jersey has a long-standing tradition of allowing the court 'wide discretion' in supervising the conduct of a trial." Id. at 53-54 (quoting Sullivan v. State, 46 N.J.L. 446, 447 (Sup. Ct. 1884)). Our review of the record reveals no abuse of discretion by the court. Instead of providing a general outline of proposed evidence, defendant's counsel provided detailed descriptions of the discrepancies in the victims' identifications, facts which were not yet in evidence. The court was well within its authority to limit the opening statement.

Nor do we agree with defendant's argument that the court denied his counsel the ability to effectively cross-examine the State's witnesses. At the time of trial, D.A. had a pending misdemeanor marijuana possession charge in Texas. N.W. also had several pending criminal charges at the time of trial: (1) in March 2016, he was charged with second-degree robbery, third-degree theft, and second-degree conspiracy to commit robbery, for one incident, and second-degree aggravated assault and second-degree witness tampering for another incident; (2) in October 2016, he was charged with second-degree possession of a weapon during a drug offense, third-degree possession of marijuana with intent to distribute, and third-degree possession with intent to distribute within 500 feet of public property; and (3) in June 2017, he was charged with a disorderly persons offense relating to marijuana. K.N., who also testified, was convicted of third-degree trespassing while the charges against defendant were pending. He was sentenced to time served. At the time of trial, he also had two pending third-degree charges and two pending disorderly person charges.

Defendant's counsel sought to question these witnesses regarding their pending criminal charges, including the nature of each charge, its potential term of imprisonment, and their expectation for favorable treatment from the State. The court allowed defense counsel to question the witnesses about the degree of

10

the charges pending against them, the sentencing exposure they faced, and expected assistance from the State, but barred questions about the nature of the pending charges. The court reasoned that "the degree of crime as well as the extent of any possible penalty if convicted on those crimes, is more than sufficient to get adequate information" to the jury regarding the motivation of the witnesses. We agree.

While testifying, D.A. admitted the degrees of his pending charges and testified that the State made no promises to him in exchange for his testimony. N.W. admitted the degrees of the charges pending against him and that those charges exposed him to a potential of forty-five years of incarceration. He testified that the State made no promises regarding those charges in exchange for his testimony. K.N. testified that he did not receive assistance from the State with respect to sentencing on his trespass conviction. He acknowledged that he was exposed to a potential eleven and one-half years of imprisonment on his pending charges and testified he did not ask the State for assistance regarding those charges.

Both the Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution provide in a criminal trial the accused has the right "to be confronted with the witnesses against him[.]" U.S.

11

Const. amend. VI; N.J. Const. art. I, ¶ 10. "Our legal system has long recognized that cross-examination is the 'greatest legal engine ever invented for the discovery of truth.'" State v. Basil, 202 N.J. 570, 591 (2010) (quoting California v. Green, 399 U.S. 149, 158 (1970)). "[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." State v. Bass, 224 N.J. 285, 301 (2016) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986)). "[A] defendant must be afforded the opportunity through effective cross-examination to show bias on the part of adverse state witnesses." State v. Sugar, 100 N.J. 214, 230 (1985); see also State v. Parsons, 341 N.J. Super. 448, 458 (App. Div. 2001) (holding "a defendant has a right to explore evidence tending to show that the State may have a 'hold' of some kind over a witness, the mere existence of which might prompt the individual to color his testimony in favor of the prosecution") (quoting State v. Holmes, 290 N.J. Super. 302, 312 (App. Div. 1996)). "A . . . claim that there is an inference of bias is particularly compelling when the witness is under investigation, or charges are pending against the witness, at the time that he or she testifies." Bass, 224 N.J. at 303.

"In an appropriate case the right of confrontation will yield to other 'legitimate interests in the criminal trial process, such as established rules of

evidence and procedure designed to ensure the fairness and reliability of criminal trials.'" State v. Castagna, 187 N.J. 293, 309 (2006) (quoting State v. Garron, 177 N.J. 147, 169 (2003)). "That the credibility of a witness may be impeached on cross-examination is well settled" however "[t]he scope of cross-examination is a matter resting in the broad discretion of the trial court." State v. Martini, 131 N.J. 176, 255 (1993), rev'd on other grounds State v. Fortin, 178 N.J. 540 (2004). "A trial judge may bar inquiry into a witness's potential bias, without offending the Confrontation Clause, because of concerns about 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" Bass, 224 N.J. at 303 (quoting Van Arsdall, 475 U.S. at 679). Pursuant to Rule 403 "relevant evidence may be excluded if its probative value is substantially outweighed by the risk of . . . undue prejudice[.]" N.J.R.E. 403.

Our review of the record in light of these precedents leads us to affirm the court's decision. The court balanced defendant's right to confront the witnesses on any expectation of favorable treatment they hoped to receive from the State in return for their testimony with the State's right to be free from prejudicial evidence regarding the nature of the charges pending against its witnesses. The limitations did not prevent defendant from using cross-examination for the

desired purpose of questioning the witnesses' credibility by suggesting the State may have influenced their testimony.

Defendant also argues that the court improperly barred his counsel from eliciting testimony that co-defendant Perry sold drugs in the past with co-defendant Hawkins and Waters. Because evidence existed that Perry had attempted to purchase drugs from defendant in the past, the court concluded questioning Perry about his history selling drugs would open the door to the State inquiring whether defendant had sold drugs to Perry.

We see no abuse of discretion in the court's decision precluding defendant's counsel from asking Perry about his history of drug sales. First, the proposed inquiry sought testimony not relevant to the murder, robbery, and related charges before the jury. Moreover, the potential prejudicial effect of eliciting testimony portraying defendant as a drug dealer greatly outweighed the potential value of discrediting Perry's credibility.

Finally, defendant's counsel sought to have a detective recount how N.W. described the shooter to another detective, who wrote the description in a report. The description at issue differed from defendant's physical appearance, and in some respects reflected other co-conspirators' appearances. While the court allowed the witness to explain how he used the information in the report in his

investigation, the court barred the witness from recounting "a description that somebody else placed in that report."

Our review of the record reveals no error in the court's decision. The testimony that defendant's counsel sought to elicit was a triple hearsay account of N.W.'s description of the assailant. The detective had no personal knowledge of N.W.'s description of the shooter and could merely read into the record what another officer reported N.W. to have said.

## III.

Defendant argues the court erred when it failed to charge the jury on third-party guilt as requested by defense counsel. Defendant contends he could reasonably have argued to the jury that co-defendant Perry or one of the other participants in the robbery fired the shot that killed K.W.

"Accurate and understandable jury instructions in criminal cases are essential to a defendant's right to a fair trial." State v. Concepcion, 111 N.J. 373, 379 (1988). "[A] complete defense includes a criminal defendant's right to introduce evidence of third-party guilt 'if the proof offered has a rational tendency to engender a reasonable doubt with respect to an essential feature of the State's case.'" State v. Perry, 225 N.J. 222, 238 (2016) (quoting State v. Cotto, 182 N.J. 316, 332 (2005)). A defendant must demonstrate "some link

15

between the [third-party] evidence and the victim or the crime." State v. Koedatich, 112 N.J. 225, 301 (1988). "[T]rial courts retain broad discretion to admit or preclude evidence of third-party guilt." Cotto, 182 at 333.

At trial, defendant argued the State's witnesses were not credible and identified defendant as the shooter to receive favorable treatment from the State on pending charges. His main contention was that Perry entered a plea agreement "to save himself from spending the rest of his life in jail" and identified defendant as the shooter "to minimize his conduct."

The court instructed the jury that it was the State's burden to prove

> the identity of the person who committed the crime[.] The defendant has neither the burden nor the duty to show that the crime, if committed, was committed by someone else or to prove the identity of that person. You must determine, therefore, not only whether the State has proven each and every element of the offense charged beyond a reasonable doubt, but also whether the State has proven beyond a reasonable doubt that this defendant is the person who committed the crime.
>
> . . . .
>
> It is your function to determine whether the witness[es'] identification of the defendant is reliable and believable or whether it is based on a mistake or for any reason is not worthy of belief. You must decide whether it is sufficiently reliable evidence that this defendant is the person who committed the offenses charged.

The court specified that "[e]yewitness identification evidence must be scrutinized carefully," and that "[h]uman memory is not foolproof." The court noted "[a]lthough nothing may appear more convincing than a witness's categorical identification of a perpetrator, you must critically analyze such testimony."

We find no error in the court's instructions. Defendant's theory of the case, that the witnesses identified defendant as the shooter in exchange for favorable treatment, was adequately represented in the jury instructions. The jury was aware that Perry and the other co-conspirators were present at the shooting and that it could not convict defendant if it did not find the testimony and out-of-court identifications of defendant as the shooter to be credible.

In addition, ballistic evidence admitted at trial established that two guns were fired after the robbery. Thus, even if defendant convinced the jury that Perry or one of his other cohorts was the shooter who killed K.W., he would not have been insulated from a conviction. Under the accomplice liability instructions given to the jury, if the jury determined that defendant facilitated or assisted his cohorts in committing the murder and robbery, they were to find him guilty.

A-4782-16T4

IV.

Defendant challenges comments made during the State's summation. During his summation, the assistant prosecutor said "for four months Detective Green went to Azim Brogsdale's house, went to locations that he knows he goes to. He couldn't get him. It wasn't until August that he was arrested. And you can consider that with all the other evidence that you consider." Defendant's counsel did not object to the prosecutor's comments. For the first time on appeal, defendant argues the comments were inappropriate because they implied flight and deliberate evasion of law enforcement, which were not supported by the evidence.

Because this issue was not raised before the court, we review defendant's contentions under a plain error standard. State v. Ross, 229 N.J. 389, 407 (2017). Our inquiry is to determine whether the alleged error was "clearly capable of producing an unjust result." R. 2:10-2. Under this standard, reversal is required if there was an error "sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached." State v. Green, 447 N.J. Super. 317, 325 (App. Div. 2016) (quoting State v. Macon, 57 N.J. 325, 336 (1971)).

"Prosecutors are expected to assert vigorously the State's case and are given considerable leeway in delivering their summations." State v. Daniels, 182 N.J. 80, 96 (2004). However, "[t]hey are duty-bound to confine their comments to facts revealed during the trial and reasonable inferences to be drawn from that evidence." State v. Frost, 158 N.J. 76, 85 (1999).

"Not every improper prosecutorial statement will warrant a new trial." Daniels, 182 N.J. at 96. "[P]rosecutorial misconduct is not grounds for reversal of a criminal conviction unless the conduct was so egregious as to deprive defendant of a fair trial." State v. Timmendequas, 161 N.J. 515, 575 (1999). "To justify reversal, the prosecutor's conduct must have been 'clearly and unmistakably improper,' and must have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense." Ibid. (quoting State v. Roach, 146 N.J. 208, 219 (1996)). Additionally, "if no objection was made to the improper remarks, the remarks will not be deemed prejudicial[,]" as "[f]ailure to make a timely objection indicates that defense counsel did not believe the remarks were prejudicial at the time they were made." Id. at 576.

The prosecutor's statement contained factual elements, as it was true that defendant was charged in April 2012 but not arrested until August 2012, and

also that a detective attempted to locate him at his previously known locations during that time. However, the State concedes that the assistant prosecutor should not have remarked that the jury can consider the four months "with all the other evidence that you consider" because the record contains no evidence of defendant's attempt to evade arrest. While the statement may have been improper, it was isolated in a summation that composed thirty-five pages of the trial transcript. In addition, the State produced a significant amount of evidence linking defendant to the murder and robberies with which he was charged. We therefore conclude that the prosecutor's remark was not clearly capable of producing an unjust result.

V.

Defendant argues the court erred in denying his motion for a new trial and for a judgment of acquittal notwithstanding the verdict. We disagree.

"[A] motion for a new trial is addressed to the sound discretion of the trial judge, and the exercise of that discretion will not be interfered with on appeal unless a clear abuse has been shown." State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000). "In considering whether a jury verdict was against the weight of the evidence, our task is to decide whether 'it clearly appears that there was a miscarriage of justice under the law.'" State v. Smith, 262 N.J. Super. 487, 512

(App. Div. 1993) (quoting R. 2:10-1).  "We must sift through the evidence 'to determine whether any trier of fact could rationally have found beyond a reasonable doubt that the essential elements of the crime were present.'"  Ibid. (quoting State v. Carter, 91 N.J. 86, 96 (1982)).  However, "an appellate court may not overturn the verdict 'merely because it might have found otherwise upon the same evidence.'"  Ibid. (quoting State v. Johnson, 203 N.J. Super. 127, 134 (App. Div. 1985)).  "Appellate intervention is warranted only to correct an 'injustice resulting from a plain and obvious failure of the jury to perform its function.'"  Ibid. (quoting Johnson, 203 N.J. Super. at 134).  "Where the jury's verdict was grounded on its assessment of witness credibility, a reviewing court may not intercede, absent clear evidence on the face of the record that the jury was mistaken or prejudiced."  Ibid. (citing State v. Haines, 20 N.J. 438, 446-47 (1956)).

A motion for a judgment of acquittal notwithstanding the verdict must be denied if all of the evidence, including defendant's proofs, is sufficient to enable a jury to find defendant guilty of the charges beyond a reasonable doubt.  State v. Speth, 323 N.J. Super. 67, 81 (App. Div. 1999).  Rule 3:20-1 provides that a court cannot set aside a jury verdict as against the weight of the evidence unless, "having given due regard to the opportunity of the jury to pass upon the

credibility of witnesses, it clearly and convincingly appears that there was a manifest denial of justice under the law." When deciding a motion, the court is "not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the State." State v. Kluber, 130 N.J. Super. 336, 342 (App. Div. 1974).

The substantive bases for defendant's motion for a new trial or a judgment of acquittal notwithstanding the verdict were also raised in his appeal: the limitations the court placed on defense counsel's examination of witnesses and the absence of a third-party guilt charge in the jury instructions. We concluded that those arguments are without merit and therefore also conclude that the court did not err when it denied defendant's motion.[3]

## VI.

Defendant argues his sentence is excessive and unconstitutional. He contends the court improperly considered the consecutive sentencing factors, improperly weighed the statutory aggravating and mitigating factors, and did not sufficiently consider his youthfulness at the time of the offenses.

---

[3] The parties dispute whether defendant's motion for a new trial was timely filed. See R. 3:20-2. Although the court concluded that defendant's motion was untimely, it elected to address the motion's merits. In light of our rejection of defendant's substantive arguments, we need not address whether his motion was timely filed or whether the court erred in considering the motion.

"Appellate review of the length of a sentence is limited." State v. Miller, 205 N.J. 109, 127 (2011). We are to affirm a sentence, even if we would have imposed a different one, so long as the sentencing judge "properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." State v. Natale, 184 N.J. 458, 489 (2005) (quoting State v. O'Donnell, 117 N.J. 210, 215 (1989)). "In general, a trial court should identify the relevant aggravating and mitigating factors, determine which factors are supported by a preponderance of evidence, balance the relevant factors, and explain how it arrives at the appropriate sentence." O'Donnell, 117 N.J. at 215. We must affirm a sentence "unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) 'the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.'" State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). "An appellate court may also remand for resentencing if the trial court considers an aggravating factor that is inappropriate to a particular defendant or to the offense at issue." Ibid.

A-4782-16T4

"In determining the appropriate sentence to impose within the range, judges first must identify any relevant aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b) that apply to the case." State v. Case, 220 N.J. 49, 64 (2014). "The finding of any factor must be supported by competent, credible evidence in the record." Ibid. "Whether a sentence should gravitate toward the upper or lower end of the range depends on a balancing of the relevant factors." Ibid. "[W]hen the mitigating factors preponderate, sentences will tend toward the lower end of the range, and when the aggravating factors preponderate, sentences will tend toward the higher end of the range." Natale, 184 N.J. at 488. "[T]he judge shall state reasons for imposing such sentence including . . . the factual basis supporting a finding of particular aggravating or mitigating factors affecting sentence . . . ." R. 3:21-4(g).

Defendant challenges the court's findings of aggravating factors one and five. Aggravating factor one is "[t]he nature and circumstances of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner[.]" N.J.S.A. 2C:44-1(a)(1). In assessing whether this factor applies, "the sentencing court reviews the severity of the defendant's crime, 'the single most important factor in the sentencing process,' assessing the degree to which defendant's conduct has threatened the

safety of its direct victims and the public." State v. Lawless, 214 N.J. 594, 609 (2013) (quoting State v. Hodge, 95 N.J. 369, 378-79 (1984)). However, a sentencing court "must avoid double-counting any element of an offense as an aggravating factor[.]" Id. at 601.

Defendant asserts the court erroneously found factor one because the victim's death may not be used as an aggravating factor in a homicide case. However, the court did not base its finding of factor one on K.W.'s death, but instead found that defendant needlessly shot K.W. after the robbery was completed and while the robbery victims were attempting to flee. The court determined these circumstances go beyond a normal robbery-homicide. We do not find fault with the court's determination.

Aggravating factor five is "a substantial likelihood that the defendant is involved in organized criminal activity." N.J.S.A. 2C:44-1(a)(5). The State did not argue that factor five applied. The court, however, found the factor applicable because defendant admitted he was once a gang member. Defendant argues that it was inappropriate for the court to apply this factor as there is no link between his prior gang involvement and the subject offenses.

We conclude that the court's application of this factor is not supported by the record. There is no evidence in the record that defendant was an active gang

A-4782-16T4

member at the time of the offenses or that the murder and robbery were connected to gang activity. Other than a warning to Perry "not to reference gangs in this case [or] anyone being in any type of gang membership[,]" the record is devoid of any mention or discussion of gang activity. There is, therefore, insufficient support for the court's determination that aggravating factor five applied. A remand is necessary for the court to reconsider defendant's sentence without aggravating factor five.

Although we remand for reconsideration of defendant's sentence in light of our conclusion regarding aggravating factor five, we address the remaining arguments raised by defendant with respect to his sentence. Defendant argues that the imposition of consecutive sentences for murder and robbery was an error, as the crimes were closely related, constituting a single period of criminal behavior, or one event. We disagree.

"Under the Code of Criminal Justice, trial judges have discretion to decide if sentences should run concurrently or consecutively." Miller, 205 N.J. at 128. "[I]n fashioning consecutive or concurrent sentences under the Code, sentencing courts should be guided by the Code's paramount sentencing goals that punishment fit the crime, not the criminal, and that there be a predictable degree of uniformity in sentencing." State v. Yarbough, 100 N.J. 627, 630 (1985).

26

In <u>Yarbough</u>, the Court adopted criteria to be applied when deciding whether to impose consecutive sentences:

(1)     there can be no free crimes in a system for which the punishment shall fit the crime;

(2)     the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;

(3)     some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:

(a)     the crimes and their objectives were predominantly independent of each other;

(b)     the crimes involved separate acts of violence or threats of violence;

(c)     the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

(d)     any of the crimes involved multiple victims;

(e)     the convictions for which the sentences are to be imposed are numerous;

(4)     there should be no double counting of aggravating factors;

(5)     successive terms for the same offense should not ordinarily be equal to the punishment for the first offense; and

A-4782-16T4

(6)   there should be an overall outer limit on the cumulation of consecutive sentences for multiple offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses.[4]

[Id. at 643-44 (footnotes omitted).]

The Yarbough factors focus upon "the nature and number of offenses for which the defendant is being sentenced, whether the offenses occurred at different times or places, and whether they involve numerous or separate victims." State v. Carey, 168 N.J. 413, 423 (2001) (quoting State v. Baylass, 114 N.J. 169, 180 (1989)). The factors "should be applied qualitatively, not quantitatively. . . . [i]t follows that a sentencing court may impose consecutive sentences even though a majority of the Yarbough factors support concurrent sentences." Carey, 168 N.J. at 427-28. "When a sentencing court properly evaluates the Yarbough factors in light of the record, the court's decision will not normally be disturbed on appeal." Miller, 205 N.J. at 129.

The charges against defendant involved multiple, independent crimes. Although the murder and robbery were committed close in place and time, the

---

4 Guideline six was superseded by statutory amendment to N.J.S.A. 2C:44-5, which provides that "[t]here shall be no overall outer limit on the cumulation of consecutive sentences[,]" as first recognized in State v. Eisenman, 153 N.J. 462, 478 (1998).

objective of the robbery, to obtain stolen property, was independent of, and accomplished prior to, the murder. Defendant shot the victim of his robbery as he was attempting to flee, for no apparent reason. We see no error in the court's decision not to merge the murder and robbery offenses.

We also reject defendant's contention that his aggregate sentence is unconstitutional because it is excessive in light of his age at the time of the murder and robbery. In Miller v. Alabama, 567 U.S. 460, 489 (2012), the Court held the Eighth Amendment prohibits the imposition of a mandatory life sentence without parole on a defendant convicted of homicide while a juvenile. "[T]he Court grounded its decisions on commonly accepted scientific and sociological notions about the unique characteristics of youth and the progressive emotional and behavioral development of juveniles." State in Interest of C.K., 233 N.J. 44, 68 (2018).

In State v. Zuber, 227 N.J. 422, 446-47 (2017), our Supreme Court held that "Miller's command that a sentencing judge 'take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison,' applies with equal strength to a sentence that is the practical equivalent of life without parole."  (citation omitted) (quoting Miller, 567 U.S. at 480). In addition, the Court held that "the force and logic of Miller's

concerns apply broadly: to cases in which a defendant commits multiple offenses during a single criminal episode; to cases in which a defendant commits multiple offenses on different occasions; and to homicide and non-homicide cases." Id. at 448.

The Court held that the five factors set forth in Miller must be considered when sentencing defendants to sentences that are the practical equivalent to life without parole for crimes committed as a juvenile. Those factors are:

> Mandatory life without parole for a juvenile
>
> [1]   precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences.
>
> [2]   prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional.
>
> [3]   neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him.
>
> [4]   ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys.

> [5]    disregards the possibility of rehabilitation even
> when the circumstances most suggest it.
>
> [Miller, 567 U.S. at 477-78 (citations omitted).]

Zuber noted that, "even when judges begin to use the Miller factors at sentencing, a small number of juveniles will receive lengthy sentences with substantial periods of parole ineligibility, particularly in cases that involve multiple offenses on different occasions or multiple victims."  227 N.J. at 451.

At sentencing, the court acknowledged the holding in Zuber and applied the Miller factors.  The court found: (1) defendant has the support of his family; (2) defendant voluntarily decided to participate in the robberies, carry a gun, and start shooting the victims as they were attempting to escape; and (3) it is highly unlikely defendant could be rehabilitated because he previously served several probationary sentences that did not curb his criminal activity.  The court found that even after considering defendant's age and the Miller factors, the aggravating factors outweighed the mitigating factors, dictating a custodial sentence towards the upper range allowed.  The court found, however, that its application of the Miller factors led it to conclude that consecutive sentences on all charges were not warranted.

After reviewing the record, we are satisfied the court sufficiently considered defendant's youth at sentencing.  Defendant's criminal history is

lengthy, several probationary sentences did not deter his criminal activity, and the serious nature of his crimes has escalated over time from drug offenses to assault and second-degree robbery relating to a carjacking. Each of these facts support the court's conclusion that despite his youth, defendant's rehabilitation is unlikely. In addition, there is ample support in the record for the court's conclusion that the murder and robbery were not impulsive acts, brought about by excessive familial or peer pressures, but deliberate decisions by a defendant who enjoyed a supportive familial environment.[5]

Nor do we find the length of defendant's sentence to shock the judicial conscious. Defendant conspired with three others to commit an armed robbery. Testimony at trial indicated that defendant selected the teenage victims. Once the robbery was accomplished, defendant shot at the fleeing victims, needlessly murdering a teenager with a bullet in his back. A long sentence was justified.

Having reviewed the record in light of applicable precedents, we conclude that defendant's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

---

[5] The State argues that defendant's sentence, under which he would be eligible for parole when he is sixty-six, is not the practical equivalent of life without parole. In light of our conclusion that the court complied with the holding in Zuber, we need not decide whether defendant's sentence is the practical equivalent of life without parole.

Defendant's judgment of conviction is affirmed. The matter is remanded for resentencing in light of our holding with respect to aggravating factor five, N.J.S.A. 2C:44-1(a)(5), and to clarify the sentence imposed on count eight. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4782-16T4