**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1230-24

JANE BISHOP,

    Plaintiff-Respondent,

v.

PUBLIC STORAGE,

    Defendant-Appellant.

_____

> Argued December 17, 2025 – Decided May 6, 2026
>
> Before Judges Smith, Berdote Byrne and Jablonski.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-7490-20.
>
> Parth M. Parikh argued the cause for appellant (Lowenstein Sandler LLP, attorneys; Parth M. Parikh, on the briefs).
>
> K. Raja Bhattacharya argued the cause for respondent (Bendit Weinstock, PA, attorneys; K. Raja Bhattacharya, on the brief).

PER CURIAM

Defendant Public Storage appeals from an order denying its motion for a new trial following a jury verdict in favor of plaintiff Jane Bishop. The matter arises from plaintiff's fall in the entryway of defendant's self-storage facility after her right foot allegedly became caught, resulting in injuries. Defendant asserts the trial court committed multiple errors, including declining to grant a mistrial after plaintiff displayed a photograph of post-incident renovations to the premises, and permitting plaintiff to question defendant's expert about compliance with the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213, and New Jersey regulations governing accessibility. We agree.

Despite not having alleged any ADA nor accessibility claims, the jury repeatedly heard about lack of compliance with the ADA, how a ramp would have made the premises safer, and saw a picture of a subsequently installed ramp. The admitted evidence, individually and cumulatively, rose to the level of a miscarriage of justice warranting a new trial because it had the capacity to mislead the jury, despite the curative instruction given by the trial court. Accordingly, we vacate the judgment and remand for a new trial.

I.

The record before us demonstrates plaintiff filed a complaint against defendant alleging negligence in connection with her fall at defendant's self-

A-1230-24

storage facility, which had only one means of ingress and egress to its office. Plaintiff alleged she was at the doorway of the office when her foot became caught, causing her to trip and sustain bodily injuries.

A jury trial took place over four days. During opening statements, plaintiff's counsel showed the jury a Google Maps photograph of the exterior of the Public Storage building. The photograph depicted the current state of the entrance, now remodeled with a ramp. He also made the following comment:

> [Plaintiff's expert] [d]idn't have a chance to examine [the premises] as it was [on the date of the incident] because Public Storage changed the overall entranceway. They built in a ramp. It was something that they had planned.

Defendant immediately objected and moved for a mistrial, arguing the photograph was being shown to demonstrate a subsequent remedial measure, contrary to N.J.R.E. 407. At sidebar, plaintiff asserted the photograph was not being used to show defendant corrected the condition in response to the fall, but rather, to explain why its expert, Dr. Wayne Nolte, "didn't have a chance to actually inspect the condition" as it was on the day of the incident and instead had to rely on photographs. Plaintiff responded that defendant had previously seen the photograph and agreed it could be shown.

A-1230-24

The trial court ultimately denied the motion for mistrial, concluding any potential prejudice could be remedied by a curative instruction. The court then instructed the jury:

> Members of the jury, I want you to listen very carefully to what I'm about to tell you. You are to disregard plaintiff's use of the last photograph that he showed to you and specifically disregard any comments that he made to you regarding that photo. You are to strike them from your mind, from your consciousness. They do not exist.

During trial, plaintiff called Dr. Nolte, a forensic engineer, who based his opinions on photographs he was shown of the premises taken on the date of the accident. He testified as to the defects involved in plaintiff's fall, opining that the step was "recessed from the edge of the concrete"; a raised screw was present on the metal piece transitioning into the floor of the office, causing the metal piece not to be secure; and a bent piece of metal flashing on the threshold created a gap underneath the metal. Dr. Nolte opined the recessed edge of the concrete, the raised screw, and the bent metal threshold piece were all defects capable of causing plaintiff's foot to become caught, but the raised screw was the "most obvious" probable cause. He further concluded the riser did not meet minimum building code standards for changes in elevation, and defendant failed to keep

4

the building's only means of egress in a safe condition in violation of the New Jersey Uniform Fire Code, N.J.A.C. 5:70-1.1 to -4.20.

Defendant called forensic engineer Dr. David Behnken. Dr. Behnken opined the entryway "was not . . . violative of any codes" and "[t]here was engineeringly nothing wrong with th[e] door." He further opined: "Ms. Bishop's accident resulted when, in all probability, she tripped over the properly constructed and code-compliant change in elevation between the exterior and interior walking surfaces." Dr. Behnken testified the only code he cited in his report was the South Brunswick maintenance code.

However, during cross-examination, plaintiff asked Dr. Behnken about the applicability of handicap accessibility codes:

> Q. You would agree that other codes are at play when you're looking at whether or not this would affect the entranceway, correct?
>
> A. Yes.
>
> . . . .
>
> Q. And what about the section on accessible and usable buildings and facilities, does it adopt the International Code Council and American National Standards Institutes standard on accessible and usable buildings and facilities?
>
> A. I believe you're referring to what's commonly referred to as New Jersey's handicap accessibility code.

5

Q. Okay.  What is that by the way, while I'm looking for this?

A. Every state has to have handicap accessibility laws. That's a federal requirement that every state has to have their own.  So the states -- New Jersey included obviously, you have handicap accessibility requirements for everything from parking spaces to doorways, thresholds.

Q. And what are those handicap –

[DEFENSE COUNSEL]: Objection, Judge.  Relevance.

[PLAINTIFF COUNSEL]: You[r] Honor, we're discussing the handicap accessibility.  I want to know if that's applicable to every building in New Jersey.

[DEFENSE COUNSEL]: What is the relevance of a handicap accessibility –

THE COURT: What's the objection?

[DEFENSE COUNSEL]: Objection.  Relevance, Judge.

THE COURT: Okay.  Thank you.  You can answer the question.

Plaintiff's counsel continued, despite another objection and Dr. Behnken's insistence that the ADA and other accessibility laws were inapplicable:

A. The year of construction of the building pre-1990s knocked out any requirements for any type of handicap accessibility.

Q. Are you sure about that?

6

A. I'm positive.

Q. Wasn't there guidance from the federal government and from the State of New Jersey requiring businesses to get up to code as of 2012?

A. No.

Q. Wasn't there guidance that said that businesses should get to code as of 2012 as feasible?

A. As feasible?

Q. Yeah, you know, practically and if feasible.

A. If they wanted. Is that what you're describing?

Q. Would you consider Public Storage to be a small or a big business?

A. I would have no idea how it's classified.

At the end of this line of questioning, Dr. Behnken admitted the stairway was not handicap accessible:

Q. This is still not a handicap accessible route?

A. Correct.

Q. This is the only route in and out of this building, correct?

A. That's correct.

Q. It has been the only route in and out of this building since 1990, correct?

A. Correct.

Q. And Public Storage could have changed this route to make it accessible, correct?

A-1230-24

A. I mean, you can do anything you want. You can knock the building down.

. . . .

Q. What changes could you have made to that entranceway?

A. You could do several things. You could reconfigure the whole thing. You could add a ramp. You could regrade, change all the asphalt on the outside.

Before closing statements and outside the presence of the jury, defendant inquired whether plaintiff intended to mention the ADA during summation. The trial court intervened and stated: "I'm going to make it so easy for you. You are barred from talking about the [ADA] since it's not pleaded in your complaint. It's never been part of the case as I understand it." Plaintiff did not heed this warning and alluded to the issue of accessibility—the same issue he brought up in his cross-examination of Dr. Behnken—in his summation:

> Now, you have a company, corporation, Public Storage Corporation, that does business all across this country, and you have code changes that take place not after this incident happened, not a month before this incident happened, not a year before this incident happened, several years before this incident happens that are to ensure safe <u>accessibility</u> into public spaces.
>
> . . . .
>
> And if you're telling me or if anyone's thinking or if anyone were to tell me that Public Storage's big corporation didn't know that these codes had been changed, I'd be shocked. I think that's impossible. And

8

from a bigger picture, from a broadest picture, Public Storage is negligent for that. . . . What do we think a reasonable company would do in a situation where there are excessive code changes regarding entrances like this? Do we not think that they would go around and make simple fixes to fix it? And defense expert told us, simple fix, put a ramp.

[(Emphasis added).]

The jury returned a unanimous verdict in plaintiff's favor, finding defendant was negligent, its negligence was the proximate cause of plaintiff's injuries, and plaintiff was not comparatively negligent. The jury awarded plaintiff $2,500,000 for past, present, and future pain and suffering, loss of enjoyment of life, and other compensable injuries.

Defendant moved for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. After a hearing, the trial court issued a written opinion denying defendant's motion on both grounds. This appeal followed.

II.

We review a trial court's ruling on a new trial motion de novo. Liberty Ins. Corp. v. Techdan, LLC, 253 N.J. 87, 103 (2023). The trial court's ruling on a motion for a new trial "shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1; see also R. 4:49-1(a) ("The trial judge shall grant the motion if, having given due regard to the

opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law."). "An appellate court reviews a trial court's evidentiary rulings . . . with substantial deference and will not overturn such a ruling unless it constituted a clear abuse of discretion." Hrymoc v. Ethicon, Inc., 254 N.J. 446, 463 (2023).

### III.

After careful review, we conclude plaintiff's counsel's repeated references to accessibility codes and laws, in addition to his display of an image of a ramp installed as a subsequent remedial measure, constituted a "miscarriage of justice" warranting a new trial. See R. 2:10-1. The central issue in the case was the alleged dangerousness of the stairway and defendant's notice of the condition. Whether the stairway was accessible pursuant to the ADA or New Jersey law was irrelevant. See N.J.R.E. 401 ("'Relevant evidence' means evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action.").

Despite this irrelevance, plaintiff's counsel extensively cross-examined defendant's engineering expert about the applicability and substance of the ADA and New Jersey regulations. Specifically, plaintiff referred to International Construction Code (ICC) accessibility standards, which he maintained "go[]

10

further" and are "even more protective" than the ADA. Despite the expert's assertion that the ADA and ICC standards were not applicable to buildings in existence as of 1990, plaintiff's counsel persisted in his questioning on this irrelevant issue. And at the end of this line of questioning, the expert admitted the stairway was not handicap-accessible. A jury listening to their exchange would easily conclude the stairway was in violation of the ADA or ICC and defendant refused to bring it into compliance. The trial court erred in permitting these references to irrelevant evidence during cross examination. See Manata v. Pereira, 436 N.J. Super. 330, 348 (App. Div. 2014) ("[I]t is improper under the guise of artful cross-examination[] to tell the jury the substance of inadmissible evidence." (quoting United States v. Sanchez, 176 F.3d 1214, 1222 (9th Cir.1999) (internal quotation marks omitted))).

The court also erred in failing to order a new trial after plaintiff raised the issue in summation despite the court's admonishment that plaintiff was not permitted to do so. See Comprehensive Neurosurgical, P.C. v. Valley Hosp., 257 N.J. 33, 84 (2024) ("[C]ounsel's comments must be confined to the facts shown or reasonably suggested by the evidence introduced during the course of the trial." (quoting Hayes v. Delamotte, 231 N.J. 373, 387 (2018))).

If left with the impression defendant knowingly violated state and federal accessibility laws, the jury could have wrongly assumed those violations constituted evidence of negligence.

Additionally, the prejudicial conduct of plaintiff's counsel in cross-examination and summation was exacerbated by his display of an image of a ramp installed as a subsequent remedial measure during his opening statement. Specifically, plaintiff's counsel showed the jury a photograph of the newly reconstructed entrance, now containing a ramp—the solution he would later extract from the expert and refer to in summation as the "simple fix." This reference violated N.J.R.E. 407. Szczecina v. PV Holding Corp., 414 N.J. Super. 173, 178 (App. Div. 2010) ("[N]othing must be said [in opening statement] which the lawyer knows cannot in fact be proved or is legally inadmissible." (quoting Passaic Val. Sewerage Comm'rs v. Geo. M. Brewster & Son, Inc., 32 N.J. 595, 605 (1960))).

Although the court warned plaintiff repeatedly throughout the trial and gave a curative instruction at the end of the opening statement, the subsequent references to ramps and ADA accessibility would have reminded the jury of the image shown in opening statements. The theme of the ramp as a "simple fix" to defendant's violation of accessibility laws permeated the entire trial. Thus, the

curative instruction was ineffective when considering all the evidence that was presented to the jury. See State v. Vallejo, 198 N.J. 122, 136 (2009) ("[A] single curative instruction may not be sufficient to cure the prejudice resulting from cumulative errors at trial.").

We conclude the "cumulative effect of multiple errors and improprieties deprived plaintiff of a fair trial and of a verdict based on the merits of the parties' claims." Morales-Hurtado v. Reinoso, 457 N.J. Super. 170, 204 (App. Div. 2018), aff'd, 241 N.J. 590 (2020) (per curiam).

The judgment is vacated and the matter is remanded for a new trial. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1230-24